IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *Plaintiff*, v. TRANSUNION; TRANSUNION, LLC; TRANSUNION INTERACTIVE, INC.; and JOHN T. DANAHER, *Defendants*. | Civil Action No. 1:22-cv-01880 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT JOHN T. DANAHER'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    THE CONSENT ORDER IS NOT ENFORCEABLE AGAINST DANAHER ............................................................................................................ 2

    II.    THE COMPLAINT FAILS TO ALLEGE DANAHER IS LIABLE FOR VIOLATIONS OF THE CONSENT ORDER ........................................................ 7

        A.    The Bureau's Theories and Arguments Are Legally Indefensible ............. 7

        B.    The Facts Alleged Do Not State A Claim Against Danaher ..................... 10

    III.    THE STATUTE OF LIMITATIONS BARS COUNT II ..................................... 13

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Brunswick Corp. v. Chrysler Corp.*,
　408 F.2d 335 (7th Cir. 1969) .................................................................................................. 3, 4

*CFPB v. Chou Team Realty LLC*,
　2021 WL 4077110 (C.D. Cal. Aug. 10, 2021) ........................................................................... 14

*CFPB v. Consumer First Legal Grp., LLC*,
　6 F.4th 694 (7th Cir. 2021) ....................................................................................................... 10

*CFPB v. Gordon*,
　819 F.3d 1179 (9th Cir. 2016) .................................................................................................... 8

*CFPB v. Howard*,
　2018 WL 4847015 (C.D. Cal. May 3, 2018) ............................................................................. 15

*CFPB v. NDG Fin. Corp.*,
　2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ............................................................................. 15

*Colonial Williamsburg Found. v. Kittinger Co.*,
　38 F.3d 133 (4th Cir. 1994) ........................................................................................................ 3

*Connolly v. J.T. Ventures*,
　851 F.2d 930 (7th Cir. 1988) ...................................................................................................... 3

*FTC v. Bay Area Bus. Council, Inc.*,
　423 F.3d 627 (7th Cir. 2005) .................................................................................................... 10

*FTC v. Consumer All., Inc.*,
　2003 WL 22287364 (N.D. Ill. Sep. 30, 2003) ............................................................................. 9

*FTC v. Credit Bureau Center, LLC*,
　937 F.3d 764 (7th Cir. 2019) ...................................................................................................... 9

*FTC v. LeanSpa, LLC*,
　920 F. Supp. 2d 270 (D. Conn. 2013) ....................................................................................... 12

*FTC v. Mandel Bros., Inc.*,
　359 U.S. 385 (1959) .................................................................................................................... 4

*FTC v. World Media Brokers*,
　415 F.3d 758 (7th Cir. 2005) .................................................................................................... 10

*Fuji Photo Film Co. v. Int'l Trade Comm'n*,
　474 F.3d 1281 (Fed. Cir. 2007) .......................................................................................... 3, 4, 6

*Gabelli v. S.E.C.*,
    568 U.S. 442 (2013) .................................................................................................... 14

*In re Holland Furnace Co.*,
    341 F.2d 548 (7th Cir. 1965) ..................................................................................... 3, 7

*In re: Certain Lens-Fitted Film Packages*,
    337-TA-406 (U.S.I.T.C. Apr. 4, 2005) ...................................................................... 3, 4

*In the Matter of Mandel Bros., Inc.*,
    54 F.T.C. 50 (1957) ......................................................................................................... 4

*Mandel Bros, Inc v. FTC*,
    254 F.2d 18 (7th Cir. 1958) ....................................................................................... 3, 4

*May Dept. Stores Co. v. First Hartford Corp.*,
    435 F.Supp. 849 (D. Conn. 1977) ................................................................................. 4

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ...................................................................................................... 14

*Microsystems Software, Inc. v. Scandinavia Online AB*,
    226 F.3d 35 (1st Cir. 2000) ........................................................................................... 6

*Reich v. Sea Sprite Boat Co.*,
    50 F.3d 413 (7th Cir. 1995) ...................................................................................... 3, 7

*Wilson v. United States,*
    221 U.S. 361 (1911) ....................................................................................................... 2

**Statutes**

12 U.S.C. § 5565(a)(2)(H) ................................................................................................. 6

12 U.S.C. § 5563(b)(1)(D) ................................................................................................. 5

12 U.S.C. § 5563(d) ........................................................................................................... 7

12 U.S.C. § 5565 ................................................................................................................. 5

12 U.S.C. § 5565(a)(2)(G) ................................................................................................. 6

**Other Authorities**

34 Yale L. & Pol'y Rev. 57, 62 (2015) ............................................................................ 4

Defendant John T. Danaher ("Danaher") respectfully submits this memorandum of law in further support of his motion to dismiss with prejudice the complaint in this action (Dkt. No. 1 (the "Complaint")) pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 31, 32, 33 ("Br.")).

**PRELIMINARY STATEMENT**

The CFPB asks this Court to do what no court has done before: enforce an out-of-court consent agreement between an agency and a private party against an individual who was not party to that agreement. The Bureau fails to cite any precedent—whether by the CFPB or any other agency—for this novel enforcement theory.

The Consent Order is not a "command." It is an agreement containing obligations that Corporate Defendants voluntarily assumed. The Consent Order is not an "order" against Danaher prescribed in accordance with the CFPA's cease-and-desist provisions (whether by adjudication or consent), 12 U.S.C. § 5563, or the CFPA's authority to grant relief for violations of federal consumer financial law, 12 U.S.C. § 5565 (as the CFPB never alleged or established that Danaher had violated any law when it issued the Consent Order). Thus, enforcing the Consent Order against Danaher would exceed the CFPB's statutory mandate and violate Danaher's due process.

Instead of addressing this fundamental failing in its claims, the CFPB instead argues that the Consent Order should be treated like a court order or an order imposed (not voluntarily entered into) by an agency following an administrative adjudication. Those orders, unlike the Consent Order, have the imprimatur of an adjudicated process and may be enforced against the backdrop of a court's inherent equitable powers of enforcement. But those orders have no resemblance to the Consent Order, and the CFPB is not a court endowed with equitable powers of enforcing its own orders. The Consent Order must be construed as written, like a contract. Thus, it is unsurprising and consistent with common sense that no court has ever enforced an agency consent order against a non-consenting party.

1

The Complaint fails for other reasons, and the Bureau has no good response. Thus, for example, the Bureau has no real explanation for why Danaher should be held responsible for the conduct of the Corporate Defendants (especially when, as here, the Corporate Defendants deny they have breached the Consent Order), why Danaher should be liable for engaging in conduct at a time when the Bureau itself had not given clear instructions or responded to Corporate Defendants' plan for compliance, or why the Bureau's delay in bringing this suit is justified when it has or should have been aware of all relevant allegations as to Danaher since 2017.

Accordingly, Danaher respectfully submits that his motion to dismiss should be granted.

## ARGUMENT

### I. The Consent Order Is Not Enforceable Against Danaher

The Bureau asks this Court to hold, for the first time, that the terms of a federal agency's out-of-court settlement with a company, in the form of a consent order, has the force of federal law against non-party, non-consenting officers, employees and agents. Finding no precedent for this ever happening before, the Bureau defends its theory by equating the Bureau's authority to that of a *court*, suggesting that the Bureau's powers are analogous to a judge's authority to issue an injunction or other order against a company and enforce it against the company's officers in a contempt proceeding. This analogy is illogical, has no precedent, and should be rejected.

The Bureau purports to rely on language in the Supreme Court case of *Wilson v. United States*, that "[a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs." 221 U.S. 361, 376 (1911). This reliance is misplaced. In *Wilson*, the "command" was a grand jury subpoena to a company to produce documents, and the Supreme Court held that a court had the authority to hold the company's officer in contempt for defying the subpoena. *Id*. at 376. In the 110 years since *Wilson*, courts have cited this language to uphold the principle that *courts and other adjudicative bodies* have equitable powers—and in

2

the case of federal courts, authority under Federal Rule of Civil Procedure 65—to issue an order against a company, and then to hold the company's officers in contempt of court for violating the court order. The cases cited by the Bureau stand for this unremarkable principle, and nothing more. *See Reich v. Sea Sprite Boat Co.*, 50 F.3d 413 (7th Cir. 1995) (contempt proceeding for violation of *court order*); *In re Holland Furnace Co.*, 341 F.2d 548, 550 (7th Cir. 1965) (criminal contempt proceeding for violation of *court order*); *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335 (7th Cir. 1969) (successor-in-interest company bound by *court-ordered* consent judgment); *Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988) (finding that officers were bound by the "*court's order* entering the settlement agreement") (emphasis added); *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 137 (4th Cir. 1994) (finding that president of company "disregard[ed] a *court order* and that the district court did not abuse its discretion in holding him in contempt") (emphasis added); *Mandel Bros, Inc v. FTC*, 254 F.2d 18 (7th Cir. 1958) (order issued by government agency after full administrative adjudication); *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281 (Fed. Cir. 2007) (same); *see also In re: Certain Lens-Fitted Film Packages*, 337-TA-406 (U.S.I.T.C. Apr. 4, 2005) (describing administrative adjudication procedural history of order in *Fuji Photo Film Co.*)

The Bureau's reliance on *Wilson* and other cases is of no merit because the Consent Order is an out-of-court settlement, not a court-issued judgment, and the Bureau does not have the equitable powers of a court or the statutory authority to take this action. *First*, the Bureau fails to explain how its Consent Order with Corporate Defendants amounts into a "command" that "Danaher is bound" to follow, analogous to a court order or grand jury subpoena. (Def.'s Br. In Opp'n, Dkt. No. 41 ("Opp'n") at 2.) The Consent Order is not a command. It is a contract and a creature of consent, and reflects the consent of only those parties that have given consent to be

3

bound by its terms. Thus, the Bureau and Corporate Defendants only—and not Danaher—agreed to the legal fiction that the Consent Order would be enforceable under the CFPA. Danaher made no such agreement, and the Bureau does not suggest otherwise. Thus, while nominally an "order" issued by the Bureau, the Consent Order is not a "command," "injunction[] [or] similar order[]." (*See* Opp'n at 15.) It was not ordered by a court or an administrative law judge after an adjudication and lacks "the imprimatur of a neutral decision maker." *See May Dept. Stores Co. v. First Hartford Corp.*, 435 F.Supp. 849, 852 (D. Conn. 1977); *cf. Mandel Bros, Inc.*, 254 F.2d at 23 , *rev'd in part sub nom. FTC v. Mandel Bros., Inc.*, 359 U.S. 385 (1959) (order issued after full administrative adjudication by impartial hearing examiner); *Fuji Photo Film Co.*, 474 F.3d at 1285 (same); *see* also *In the Matter of Mandel Bros., Inc.*, 54 F.T.C. 50, 51 (1957) (describing underlying administrative proceeding in *Mandel*); *In re: Certain Lens-Fitted Film Packages*, 337-TA-406 (same, for *Fuji Photo Film Co.*). "[U]nlike an out-of-court settlement, a consent decree is backed by the court's contempt power." 34 Yale L. & Pol'y Rev. 57, 62 (2015). "When a *court* has rendered a consent judgment, it has made an adjudication." *Brunswick Corp.*, 408 F.2d at 337 (emphasis added). The Bureau does not have the equitable powers of a court. It has only those powers authorized by statute. The Bureau cites no statutory basis for enforcing a consent order against a non-consenting party. Without a court order, the Consent Order is merely a contract between consenting parties.

*Second*, even if the Consent Order were a "command," it would be a command against only the Corporate Defendants. That is because the Bureau never issued the Consent Order against Danaher pursuant to the requirements of the CFPA and, unlike Corporate Defendants, Danaher did not waive his rights to those protections. Indeed, the Bureau never even tried to satisfy the prerequisite procedural protections § 5563 requires as to Danaher before the CFPB may impose

4

an order against him.  To overcome this obvious deficiency, the CFPB argues that § 5563 authorizes the Bureau "to issue orders against parties and provide process to those parties," but that the Bureau need not satisfy those requirements before an order can become a command against a non-consenting party because "those injunctive requirements bind the company's officers and others who act in concert with the company." (Opp'n at 18.)  This is a fundamentally flawed interpretation of § 5563.  Its provisions are not optional.  The Bureau may only issue a cease-and-desist order "[i]n the event of consent under subparagraph (C), or if, upon the record, made at any such hearing, the Bureau finds that any violation specified in the notice of charges has been established."  12 U.S.C. § 5563(b)(1)(D).  Neither event occurred here as to Danaher.

In light of its failure to abide by § 5563's procedural requirements, the Bureau alternatively argues that it can enforce the Consent Order against Danaher based on the authority of 12 U.S.C. § 5565.  Section 5565 grants the Bureau "jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law."  12 U.S.C. § 5565.  The Bureau claims, without citation, that this section authorizes the CFPB to issue orders imposing injunctive relief not only on companies that violate federal consumer financial laws, but also on any number of their unnamed, non-consenting officers, employees, or agents against whom no violation has been established.  (Opp'n at 17-18.)  This interpretation is flawed for a number of reasons.  As discussed, the Bureau's argument rests on the flawed presumption that the Consent Order is a "command" like an "injunction[] or other similar orders" issued against a company by a court.  (Opp'n 18.)

Regardless, § 5565's phrase "*any* appropriate legal or equitable relief" does not support the Bureau's argument that it can seek relief against anyone at all.  (Opp'n at 17, 19 (emphasis in Opp'n).)  Section 5565 is clearly limited to the party that has been found to have violated federal

5

consumer financial law: "Relief under this section may include . . . limits on the activities or functions of the person"—*i.e.* the person that violates the law. *See* 12 U.S.C. § 5565(a)(2)(G). Similarly, the Bureau may only impose civil money penalties on the person that violates any provision of federal consumer financial law. *See id.* § 5565(a)(2)(H), (c) (limiting civil monetary penalties to "[a]ny person that violates . . . any provision of Federal consumer financial law"). The Consent Order did not allege or "find" that Danaher violated any law—and Danaher certainly did not admit or consent to anything of the sort.

*Third*, ignoring the CFPA's procedural requirements violates Danaher's due process rights, and the Bureau's only retort is that Danaher's due process rights cannot be violated because he had notice of the Consent Order and was in "privity" with Corporate Defendants. (Opp'n at 16-17.) But the Bureau's argument relies upon out-of-Circuit cases rejecting due process arguments raised in the context of enforcing an order born out of an adjudicated proceeding, not a stipulated consent order. *See, e.g.*, *Fuji Photo Film Co.*, 474 F.3d 1281 (rejecting due process arguments in the context of an adjudicated administrative proceeding); *Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35 (1st Cir. 2000) (rejecting due process arguments raised by third-parties in context of litigated, court-issued judgment). The Bureau cites no cases—and the undersigned are aware of no cases—that allow a regulatory agency to ignore a statutory mandate affording due process. Simply, there is no precedent for the Bureau's novel argument that it can ignore the prerequisites of § 5563 merely because Danaher had "notice" of the Consent Order and because he was employed by Corporate Defendants.

Here, the Bureau attempts to cut procedural corners by seeking civil money penalties without first securing a court order, as the "[s]pecial rules for enforcement of orders" clearly contemplate. *See* 12 U.S.C. § 5563(d). Nothing in the CFPA allows the Bureau to seek an end-

6

run around this normal statutory process. If the CFPB wishes to invoke a federal court's equitable powers of enforcement, it must first secure a court order. Only then may the CFPB initiate contempt proceedings for violations of that court order. That, in fact, is what agencies have done in other cases. *See Reich*, 50 F.3d at 414; *In re Holland Furnace Co.*, 341 F.2d at 550.

Taken to its logical extreme, the Bureau's position would mean that the CFPB could hail into a federal court and impose civil damages and injunctive relief upon any individual merely because that individual works for a company that itself agreed to a consent order with the CFPB. Such an extreme interpretation finds no justification in the CFPA or any legal authority. This broadening of civil liability would be a significant departure from the long-held legal framework governing employer-employee liability. Such an understanding of the statute would allow the Bureau unchecked authority to impose the liabilities of a company onto its legally distinct and legally protected individual officers. The Bureau fails to identify any court that has upheld such an expansive theory of liability. This Court should not be the first.

## II. The Complaint Fails to Allege Danaher Is Liable for Violations of the Consent Order

The CFPB overstates both the law and the facts relating to Danaher's liability.

### A. The Bureau's Theories and Arguments Are Legally Indefensible

*First*, Danaher does not concede the standard for individual liability as stated by the Bureau. (Opp'n at 10-11; Br. at 14 and n.6 ("[F]or the purposes of this motion only, Danaher addresses Count II under that framework.").) As Danaher made clear in his opening brief, at a bare minimum, the CFPB must establish such an action is permissible under the CFPA, which as demonstrated above, the Bureau has failed to do because Danaher is not subject to the Consent Order and the Bureau has no basis to otherwise charge him with a violation of the CFPA.

Confusingly, the Bureau argues that in a single count, it has alleged Danaher is both derivatively liable for TUI's alleged violations and directly liable for failing to prevent the same.

7

(Opp'n at 3-4.) Highlighting this unprecedented enforcement theory, the Bureau fails to cite a single case or even propose a standard for Danaher's alleged direct liability. (Opp'n at 14.) Plainly, this theory of liability must fail because Danaher is not a respondent to the Consent Order. (*See* Br. at 14 n.6 (citing Mem. In Supp. of Pet. To Enforce, *CFPB v. Integrity Advance, LLC*, No. 21-mc-206 (D. Kan.) (Dkt. No. 2 at 7) (filed May 19, 2021).) Moreover, per the Consent Order and consistent with basic corporate liability, Corporate Defendants may be liable for an officer's action in his or her official capacity that causes Corporate Defendants to violate the Consent Order. But the inverse is not true—an officer cannot be held liable for the corporation's violations. Yet the Bureau seeks to hold Danaher, a former officer, responsible for Corporate Defendants' actions that allegedly violated the Consent Order, despite that the Consent Order does not require Danaher to "ensure that TUI took [any] affirmative actions." (Opp'n at 14.) This claim must fail.

Similarly, nowhere in its ten pages of briefing on the issue does the Bureau cite a case in which a court analyzed individual liability for an administrative consent order violation. (Opp'n at 4-14.) Although absent from the text of the CFPA, courts have applied the common law standard of individual liability for a corporation's unfair or deceptive acts or practices under the Federal Trade Commission Act ("FTCA") to claims of individual liability for a corporation's unfair, deceptive, or abusive acts or practices ("UDAAP") under the CFPA. *See, e.g.*, *CFPB v. Gordon*, 819 F.3d 1179, 1193 & n.8 (9th Cir. 2016). The Bureau makes no attempt to argue why that standard should apply here, or why the Bureau should even have the ability to bring a cause of action for individual liability of corporate consent order violations. For all the reasons above, Danaher urges this Court to reject the Bureau's novel and statutorily unsupported cause of action for individual liability. Actions for violations of a consent order should be limited to the respondents of that order.

*Second*, assuming *arguendo* that individual liability for UDAAPs or unfair or deceptive acts under the FTCA applies, the CFPB misstates the knowledge requirement. The FTC standard itself makes clear that it requires knowledge of the deceptiveness or falsity of the misrepresentation: "actual knowledge of material misrepresentations, reckless indifference *to the truth or falsity* of such misrepresentations, or an awareness of a *high probability of fraud* along with an intentional avoidance of the truth." (Opp'n at 10 (quoting *FTC v. World Media Brokers, Inc.*, 415 F.3d 758, 764 (7th Cir. 2005) (citing *Amy Travel*, 875 F.2d at 573-74)) (emphasis added)). If knowledge of the representations themselves were sufficient, the "reckless indifference" and "intentional avoidance" portion of this standard would be meaningless. Other cases from this district reflect as much. *See, e.g.*, *FTC v. Consumer All., Inc.*, 2003 WL 22287364, at *6 (N.D. Ill. Sep. 30, 2003) ("[T]he individual knew or should have known that the conduct was dishonest or fraudulent.") (quoting *Amy Travel*, 875 F.2d at 573-74).

The Bureau places undue emphasis on *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), in which the Seventh Circuit's analysis of an individual's liability for a violation of the Restore Online Shopper Confidence Act ("ROSCA") was only two sentences: "Brown next contends that even if corporate liability is established, he should not be held personally liable. But it's undisputed that he controlled the websites and was aware of their content. That's enough to establish personal liability for the ROSCA violations." *Id.* at 770. As this quote demonstrates, the Court did not specifically address the knowledge requirement. The *Credit Bureau Center* court's brief analysis on the largely undisputed facts of that case did not alter the general rule that "the individual 'knew or should have known about the deceptive practices.'" *Id.* at 769 (quoting *FTC v. World Media Brokers*, 415 F.3d 758, 764 (7th Cir. 2005)). Tellingly, in *World Media Brokers*, it is clear that the knowledge requirement is about the knowledge of the deceptive nature of the

9

acts, not the mere fact of the acts themselves. The Seventh Circuit reasoned that each individual defendant knew selling lottery tickets to U.S. consumers was illegal because each was made aware of certain red flags or other warnings about their conduct. *See id.* at 764–766 (letter from Assistant Attorney General of Oregon warning that sale was a criminal offense; letters from consumers that business was illegal; personally named in cease and desist order from US Postal Service).[1]

Moreover, the Seventh Circuit has held, in the context of whether a violation of the CFPA is "reckless" under 12 U.S.C. § 5565(c)(2)(B), that the Bureau is required to prove recklessness with respect to the illegality of the conduct, not only the facts constituting the offense. *CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 711 (7th Cir. 2021). The Bureau provides no reason why this same definition of "recklessness" should not hold in the context of its claim for an individual's "reckless" disregard of consent order violations. Thus, to establish that Danaher was reckless, his conduct must involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *See id.*

### B. The Facts Alleged Do Not State A Claim Against Danaher

The Bureau's recitation of the so-called factual allegations also fails to state a claim.

*First*, Danaher's alleged "plan to delay or avoid implementation" of the Consent Order does not demonstrate any element of the Bureau's purported claim. The Bureau has no response to Danaher's argument that the CFPB does not allege whether this plan was put into action and which (if any) of Corporate Defendants' alleged violations were caused by this plan. (Br. at 16.) The Bureau makes no attempt to connect this allegation to any alleged action or omission, and thus

---

[1] Contrary to the Bureau's assertions (Opp'n at 10), the Seventh Circuit applied the same three-tier knowledge requirement in *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 636 (7th Cir. 2005). As in *World Media Brokers*, the Seventh Circuit reasoned that red flags alerted the individual defendants to the corporation's deceptive practices. *See id.* at 637–638 (high volume of complaints, cease and desist letter, lawsuit filed, check returns from bank).

10

also fails to connect any such putative action or omission to a violation of the Consent Order. (Opp'n at 4-5). Simply, the alleged "plan" does not reflect any knowing violation (because the Bureau fails to allege any connection to a violation) or Danaher's participation in any violation (because it does allege the plan resulted in any action or inaction in the business). (Opp'n at 12.)

*Second*, the Bureau concedes that Danaher's title and his receipt of the Consent Order do not establish all elements of the Bureau's claims against Danaher. (Opp'n at 29.) Putting aside these two allegations, all that is left in the Complaint regarding Danaher is a single factual allegation: that Danaher instructed TUI to stop using the checkbox in affiliate marketing. The Bureau hitches its entire claim to this single action by Danaher. Danaher maintains that the Bureau has not plausibly established that the Consent Order extends to affiliate marketing, or that the Conduct Provisions were in effect. (*See* Br. at 16-17.) Nevertheless, even if Danaher's instruction was inconsistent with the terms of the Consent Order, it would not establish that Danaher in fact effectuated or had sufficient control to effectuate that instruction, and the fact of giving an "instruction" does not plausibly support an inference that Danaher participated in or controlled every aspect of TUI's marketing or Corporate Defendants' alleged violations.

*Third*, the Bureau asserts without support that Danaher is responsible for a variety of alleged conduct (*see* Compl. ¶ 187), nearly all of which has nothing to do with the checkbox in affiliate marketing: specifically, "Call to Action" buttons on Corporate Defendants' website, email marketing campaigns, a VantageScore disclosure on all advertisements and enrollments, requesting credit card information on the Homepage Enrollment Form, negative option trial offers and advertisements on annualcreditreport.com, "Call to Action" buttons on free annual file disclosures, failure to provide a simple cancellation mechanism, failure to collect and assess certain data (*see id.* ¶¶ 32-104, 124-157); though ads for "free" or $1 credit scores and credit reports are

11

allegedly related to negative option affiliate marketing, the ads are distinct from the checkbox (*see id.* ¶¶ 105-109). But nowhere does the Bureau allege Danaher's involvement in these activities.

To support its claim that Danaher should be responsible for these acts, the Bureau relies on a single, distinguishable case to argue that an "example" of his control or involvement is sufficient. (Opp'n at 8.) In *FTC v. LeanSpa, LLC*, the FTC alleged not only that the individual defendant controlled the alleged practices, but also alleged a series of specific acts taken by *the individual and his company*. 920 F. Supp. 2d 270, 278 (D. Conn. 2013). The Court reasoned that the alleged series of specific acts taken with the company and an alleged conversation with a co-defendant saved the FTC's allegations from being "merely conclusory." *See id.* Here, unlike in *LeanSpa*, the Complaint does not allege that Danaher participated in the series of specific actions at issue with Corporate Defendants or otherwise was involved in the other challenged conduct.

*Fourth*, the Bureau fails to allege that Danaher knew of or recklessly disregarded any violations of the Consent Order. The Bureau does not meaningfully engage with Danaher's argument that, based on the plain language of the Consent Order (not necessarily its legal effect), Danaher could not have known or recklessly disregarded that the Conduct Provisions were in effect, that they applied to affiliate marketing, or that he or TUI were violating the Consent Order. (Br. at 16-18.) The Bureau has conceded that Danaher's receipt of the Consent Order would not, standing alone, establish Danaher's liability. Moreover, the Consent Order would not have put Danaher on notice of the wrongfulness of the alleged violations of Paragraph 40(a), which does not set forth any required action (*cf.* App'x A ¶ 40(b)-(d)) but merely restates the law against material misstatements in offering credit reporting products to consumers.

Instead, the Bureau makes allegations found nowhere in the Complaint that (1) "Danaher knew TUI's websites did not contain the disclosures required by the Order"; (2) Danaher knew *he*

12

could be held liable for maximum civil penalties (notwithstanding that the Bureau has never alleged any provision of the Consent Order "applies" to Danaher except Paragraph 40); and (3) Danaher knew the Bureau had informed TUI it was violating the Consent Order (again, based solely on his position). (Opp'n at 12-13.) The Court should disregard such extraneous assertions.[2]

### III. The Statute of Limitations Bars Count II

The Bureau advances a wildly generous interpretation of the statute of limitations that would allow the CFPB to endlessly extend the statute of limitations by failing to investigate violations. This is incorrect as a matter of law, policy, and common sense.

*First*, the Bureau misunderstands Danaher's position. Danaher asserts that an inquiry notice standard applies to the CFPA's statute of limitations. The CFPB "discovers" alleged violations when the Bureau has notice of facts, which in the exercise of reasonable diligence, would have led to actual knowledge. The Supreme Court and the Seventh Circuit have described this standard—notice of facts that would lead to actual knowledge—as inquiry notice. (Br. at 23.)

The Bureau asserts that "discovery" means actual discovery. (Opp'n at 23 n.13.) It cites to a single district court case from California, currently on appeal, in which the court addresses the statute of limitations entirely in dicta after finding the defendant's "statute of limitations defense thus fails procedurally." *CFPB v. Chou Team Realty LLC*, 2021 WL 4077110, at *5 (C.D. Cal. Aug. 10, 2021). The court's reasoning interpreting the statute of limitations is limited to a single

---

[2] Elsewhere, the Bureau slips in other allegations not contained in the Complaint: Danaher had "ultimate authority" over TU's marketing (Opp'n at 1); implies that Danaher instructed TUI to stop using a checkbox entirely (*id.* at 2), whereas Complaint is limited to Affiliate marketing (Compl. ¶ 171); "As a result of Danaher's omissions and failures to act, much of Paragraph 40 was simply never implemented" (Opp'n at 4); "Danaher monitored the effect of the checkbox on enrollment figures" (*id.* at 5); "By March 2017, Danaher had seen enough" (*id.* at 4); "TUI complied" (*id.* at 5; *see also id.* at 8 ("which TUI followed")); "Danaher knew TUI's websites did not contain the disclosures required by the Order" (*id.* at 12).

13

sentence that the Supreme Court, in 1984, cautioned against reading "constructive discovery" rules into statutes. *See id.* (citing *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984)). (*See* Opp'n at 28.) However, far more recent Supreme Court precedent has recognized that for many years, "legislators have written the word 'discovery' directly into the statute. And when they have done so, state and federal courts have typically interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Merck & Co. v. Reynolds*, 559 U.S. 633, 645 (2010) (citing several cases). Given that the CFPA was codified in July 2010, just a few months after *Merck* was decided, this Court should likewise assume that Congress was aware that its use of "discovery" created, at a minimum, a constructive discovery standard, if not an inquiry notice standard. *See id.* at 648. That is especially true here, where the Supreme Court has also refused to allow the government to *benefit* from the discovery rule to the same extent as private parties by delaying accrual until the government had discovered the cause of action. *See Gabelli v. S.E.C.*, 568 U.S. 442, 449–50 (2013). But that does not mean the CFPB cannot be "charged with discovery" when it has sufficient information to have discovered the violation. *See Merck*, 559 U.S. at 645.

*Second*, assuming the few facts alleged in the Complaint state a claim (they do not), under either an inquiry notice or constructive notice standard, Count II is time-barred. Contrary to the Bureau's feigned confusion (Opp'n at 29), the Bureau knew as early as May 2, 2017 that Corporate Defendants did not intend at that time to implement the compliance plan until it received a non-objection from the CFPB (although Corporate Defendants assert that they later did so). (Ex. A to Knox Decl., Dkt. No. 31-2 (Corporate Defendants would draft a compliance plan and start "execution of the plan once submitted *and approved by the CFPB*" (emphasis added).) The CFPB also knew that Danaher was the President of TUI and that he had received the Consent Order. A

14

reasonable regulator would therefore have been on notice of any conduct by Danaher that could have given rise to the instant suit.

*Third*, the Bureau fails to cite any cases that support its claim that a failure to ensure compliance with a consent order over time constitutes a series of new and separate violations of the CFPA. (Opp'n at 21.) These authorities are neither binding nor persuasive on this issue. *See CFPB v. NDG Fin. Corp.*, 2016 WL 7188792, at *20 (S.D.N.Y. Dec. 2, 2016) (reasoning, without citation, that where *UDAAP claims* are based on alleged misrepresentations to consumers, each representation is a new cause of action); *CFPB v. Howard*, 2018 WL 4847015, at *3 (C.D. Cal. May 3, 2018) (applying the standard for multiple, distinct underlying crimes). Here, it is not at all clear that Danaher's mere service as an officer of TUI "independently could support liability." *See id.* Indeed, as highlighted above, the only meaningful factual allegation in this case is an instruction that allegedly occurred in 2015, far more than three years prior to the filing of the Complaint. Thus, Danaher's liability in the last three years is based solely on his title and his knowledge of the Consent Order. As the Bureau concedes, this would not support any claim against Danaher. Accordingly, the Bureau has not alleged any violation that occurred within the last three years and Count II is entirely time-barred.

## CONCLUSION

For these reasons, Danaher respectfully submits that the Court should dismiss the claims against him with prejudice.

Dated: September 9, 2022

By: /s/ *Jeffery H. Knox*

Jeffery H. Knox (*pro hac vice*)
Abram J. Ellis (*pro hac vice*)
Nicole A. Palmadesso (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
jeffery.knox@stblaw.com
aellis@stblaw.com
nicole.palmadesso@stblaw.com
Telephone: (202) 636-5500
Facsimile: (202) 636-5502

Ronald S. Safer
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
rsafer@rshc-law.com
Telephone: (312) 471-8736
Facsimile: (312) 471-8701

*Counsel for Defendant John T. Danaher*