IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>TransUnion, TransUnion, LLC, TransUnion Interactive, Inc., and John T. Danaher,<br><br>Defendants. | Case No. 1:22-cv-1880<br><br>Honorable Judge Elaine E. Bucklo |

**PLAINTIFF'S RESPONSE TO TRANSUNION DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

In a further attempt to avoid liability for the violations set forth in the Complaint, ECF No. 1, Corporate Defendants call the Court's attention to the Fifth Circuit's ruling in *Community Financial Services Ass'n of Am. v. CFPB*, 2022 WL 11054082 (5th Cir. Oct. 19, 2022). The Fifth Circuit panel thought that Congress violated the Appropriations Clause and the separation of powers when it passed a law authorizing the Bureau to spend money. That decision is neither controlling nor correct. It does not help Defendants here.

As set forth in the Bureau's Opposition to Corporate Defendants' Motion to Dismiss ("Opp."), ECF No. 40 at 27, the Bureau's spending is validly authorized by the Consumer Financial Protection Act. When it established the Bureau within the Federal Reserve System, Congress authorized the Bureau to draw and spend on its operations up to a capped amount of

1

funds each year from the combined earnings of the System. *See* 12 U.S.C. § 5497(a), (c).[1] The Bureau's funding mechanism is not unique, and every court to previously consider the issue has held it constitutional. Opp. at 27 (collecting cases). But the Fifth Circuit decided that certain features of the statute rendered this mechanism unconstitutional. In particular, the court believed that the Bureau's funding was impermissibly "double-insulated" from congressional oversight because it (1) is not set through annual spending bills and (2) is "drawn from a source that is itself outside the appropriations process"—the Federal Reserve System. *CFSA*, 2022 WL 11054082, *14.

The court acknowledged (at *16) the Supreme Court's repeated holdings that the Appropriations Clause simply requires that "[m]oney may be paid out only through an appropriation made by law; *in other words*, the payment of money from the Treasury must be authorized by a statute." *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (emphasis added); *accord Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937). But it concluded that, actually, a statutory authorization to spend money does not constitute an appropriation made by law. The court decided that something else was required to establish an "appropriation," but the court did not say what else it thought Congress had to do in order to appropriate funds under the Constitution. *See CFSA*, 2022 WL 11054082, *16. The court also concluded that the Bureau's "enforcement [and] regulatory authority"—which it saw as far more significant than that of other

---

[1] For fiscal years 2013 and later, Congress set the cap on the amount that the Bureau can draw at approximately $597.6 million, which is 12% of the total operating expenses of the Federal Reserve System as reported in the Board of Governors' 2009 Report. The capped amount is then adjusted annually based on a specialized measure of inflation. *See* 12 U.S.C. § 5497(a)(2). The statute provides that the Bureau may draw an amount *less* than the cap if the Director determines that such amount will suffice "to carry out the authorities of the Bureau under Federal consumer financial law." *Id.* § 5497(a)(1).

2

agencies funded in a similar manner, including the Federal Reserve Board—made the constitutional problem "more acute." *Id.* at *15, 17; *but see Collins v. Yellen*, 141 S. Ct. 1761, 1784-85 (2021) (expressly rejecting this kind of inquiry in assessing the constitutionality of a restriction on the President's removal power and explaining that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies").

The Fifth Circuit's decision is without support in law. The court mustered no case from more than 230 years of constitutional history that has ever held that Congress violates the Appropriations Clause or separation of powers when it authorizes spending by statute, as it did for the Bureau.² The panel acknowledged that every other court to address the Bureau's funding has upheld it. *CFSA*, 2022 WL 11054082, *16 n.15. Its contrary conclusion conflicts with the Supreme Court's holdings in *Richmond* and *Cincinnati Soap*, holdings that the Fifth Circuit simply dismissed, *id.* at *16. And it failed to grapple with the fact that Congress has, from the very beginning, adopted a variety of different approaches when passing laws authorizing spending. *See, e.g.*, An act to establish the Post-Office and Post Roads within the United States, 1 Stat. 232 (1792) (funding the Post Office through rates of postage rather than through annual spending bills); An act for the better government of the Navy of the United States, 2 Stat. 45, 52-

---

² Under contemporary congressional practice, a distinction is sometimes relevant between "authorizing" legislation that creates a program or agency and "appropriating" legislation that funds the program or agency. *See* Cong. Res. Serv., Overview of the Authorization-Appropriations Process 1 (Nov. 2012), *available at* https://crsreports.congress.gov/product/pdf/RS/RS20371. This distinction, however, is not constitutionally prescribed and instead "is derived from House and Senate rules." *Id.* "Not all federal agencies and programs … are funded through this authorization-appropriations process," including the many that are funded through provisions of their authorizing statute. *Id.* If the Fifth Circuit meant to say that this feature of contemporary practice is constitutionally required, that was error. *See Richmond*, 496 U.S. at 424 (holding that the Appropriations Clause simply requires that "the payment of money from the Treasury must be authorized by a statute").

3

53 (1800) (funding "the payment of pensions and half pay" to sailors through proceeds from captured enemy vessels rather than through annual spending bills); National Bank Act of 1863, 12 Stat. 665, 670 (funding the Office of the Comptroller of the Currency through assessments on banks rather than through annual spending bills); *see also Clinton v. City of New York*, 524 U.S. 417, 466 (1998) (Scalia, J., concurring in part and dissenting in part) ("From a very early date Congress …made permissive individual appropriations, leaving the decision whether to spend the money to the President's unfettered discretion."; collecting examples).

Nor does the Fifth Circuit's decision make sense on its own terms. The court believed the Bureau's funding was more insulated from congressional oversight because it comes from the receipts of the Federal Reserve System (of which the Bureau is a part). But the source of the Bureau's funds makes no difference to Congress's ability to oversee how the Bureau spends that money to carry out its duties. (This point also does not differentiate the Bureau from the Federal Reserve Board, which like the Bureau is part of the Federal Reserve System and is funded from the same source.) Congress is fully capable of overseeing the Bureau's spending, including because of several provisions in the Bureau's statute that ensure its ability to supervise. *See* 12 U.S.C. §§ 5496(a), (c)(2), 5497(a)(5), (e)(4) (requiring regular audits for, reports to, and appearances before Congress concerning the Bureau's spending). Congress in no way "relinquish[ed] its jurisdiction," *CFSA*, 2022 WL 11054082, *15, to monitor the Bureau's funding, or even to change that funding as it sees fit.

The fact that the House and Senate Appropriations Committees' review of Bureau funds is circumscribed by statute, 12 U.S.C. § 5497(a)(2)(C); *but see id.* § 5497(e)(4) (requiring the Bureau to report to the Appropriations Committees about its financial operations), is not constitutionally relevant. *Contra CFSA*, 2022 WL 11054082, *15. The Constitution does not

4

require Congress to establish particular committees with particular authorities. Instead, Article I, § 5, cl. 2 gives each house the power "to determine the Rules of its Proceedings."[3]

The Fifth Circuit's holding also finds no support in a statutory provision stating that funds transferred to the Bureau "shall not be construed to be Government funds or appropriated monies," 12 U.S.C. § 5497(c)(2). That clause, like similar provisions applicable to the Farm Credit Administration, *id.* § 2250(b)(2), the Federal Reserve Board, *id.* § 244, and the OCC, *id.* §§ 16, 481, determines the degree to which various statutory restrictions on appropriations apply to the Bureau's use of funds. *See, e.g.*, GAO, Principles of Federal Appropriations Law, 4th ed., at 2-25–2-26 & n.29 (2016), *available at* https://www.gao.gov/assets/2019-11/675709.pdf. It has nothing to do with the constitutional requirement (satisfied here) that Congress authorize the executive to spend money. *Contra CFSA*, 2022 WL 11054082, *15-16.

To the extent the Fifth Circuit relied on the fact that Bureau's funding authorization is not time-limited, *see id.* *15 n.14, it erred. As the Bureau previously explained, *see* Opp. at 27-28, the Constitution sets a time limit on appropriations for the Army but not for any other purpose. And Congress has long authorized non-Army spending without specific time limits. *See, e.g.*, *Cincinnati Soap*, 301 U.S. at 310-11, 321 (rejecting Appropriations Clause challenge to non-time-limited appropriation). The other aspects of the statute that the court mentioned likewise do not matter for Congress's Article I authority.

Although the Fifth Circuit described the Bureau's funding as "novel" and "unprecedented," 2022 WL 11054082, *15, the Bureau is not meaningfully different from countless other agencies and programs that are funded in ways other than annual spending bills.

---

[3] Indeed, neither Appropriations Committee even existed until the 1860s. *See* Committee on Appropriations, 1867-2008, S. Doc. No. 110-14, at 5 (2008), *available at* https://www.govinfo.gov/content/pkg/CDOC-110sdoc14/pdf/CDOC-110sdoc14.pdf.

For example, the Federal Reserve Board, OCC, FDIC, and other agencies of long standing draw and spend money pursuant to statutory authorizations similar to the Bureau's (albeit without the spending cap that the Bureau has). *See* Opp. at 27 (collecting examples). Under the Fifth Circuit's reasoning, all of these authorizations, and numerous others, might become constitutionally suspect. The decision leaves no way to know what statutory spending authorizations count, in the panel's view, as an "appropriation" compliant with the Appropriations Clause. (The court also clearly erred (at *17) in judging the Bureau's "regulatory authority" as more significant than that of other agencies including the Federal Reserve Board, "whose every act has global consequence." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2239 (2020) (Kagan, J., dissenting in part); *cf. Collins*, 141 S. Ct. at 1784-85 (rejecting this kind of comparative exercise in the removal context).)

The Court should reject the Fifth Circuit's analysis and instead join every other court to address the issue—including the en banc D.C. Circuit—in upholding the Bureau's statutory funding mechanism. *See* Opp. at 27 (collecting cases, including *PHH Corp. v. CFPB*, 881 F.3d 75, 95 (D.C. Cir. 2018) (en banc), *abrogated on other grounds*, *Seila Law*, 140 S. Ct. 2183). And even if the Court were to disagree, it should still reject Corporate Defendants' request to dismiss the Complaint because any defect in the Bureau's funding authorization (and there is none) would not deprive the Bureau of the power to carry out the responsibilities given it by Congress to enforce the law. *See id.* at 28.

                                              Respectfully submitted,

Dated: October 25, 2022                Eric Halperin
*Enforcement Director*

                                              David M. Rubenstein
*Deputy Enforcement Director*

                                              Cynthia Gooen Lesser
*Assistant Deputy Enforcement Director*

                                              s/ Kevin E. Friedl_____
Kevin E. Friedl
Jessica Rank Divine
Tracy L. Hilmer
Mary K. Warren
Alisha Marie S. Nair
*Attorneys*

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (202) 435-9268 (Friedl)
Telephone: (202) 435-7863 (Divine)
Telephone: (202) 435-7459 (Hilmer)
Telephone: (202) 435-7815 (Warren)
Telephone: (202) 718-0339 (Nair)

Email: kevin.friedl@cfpb.gov
Email: jessica.divine@cfpb.gov
Email: tracy.hilmer@cfpb.gov
Email: mary.warren@cfpb.gov
Email: alishamarie.nair@cfpb.gov

*Attorneys for Plaintiff Consumer Financial Protection Bureau*