IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU,

                *Plaintiff*,

    v.

TRANSUNION; TRANSUNION, LLC;
TRANSUNION INTERACTIVE, INC.;
and JOHN T. DANAHER,

              *Defendants*.

Civil Action No. 1:22-cv-01880

District Judge Elaine E. Bucklo

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF CFPB'S MOTION FOR LEAVE TO AMEND

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 3

ARGUMENT ......................................................................................................................... 3

    A.  The Bureau's Delay in Asserting its Substantial Assistance Claim is Inexplicable
       Except as a Tactic. ...................................................................................................... 3

    B.  Amendment Should Not Be Permitted Because the Bureau's New Cause of Action is
       Futile. ......................................................................................................................... 6

        1.  There is No Statutory Basis for the Bureau's Substantial Assistance Claim............... 7

        2.  The Bureau's Unprecedented Substantial Assistance Claim Would Violate Basic
           Principles of Statutory Construction ........................................................................ 10

CONCLUSION.................................................................................................................... 12

i

# TABLE OF AUTHORITIES

## Cases

*Bethany Pharmacal Co. v. QVC, Inc.*,
    241 F.3d 854 (7th Cir. 2001) ................................................................... 5

*CFPB v. Universal Debt & Payment Sols.*,
    2015 U.S. Dist. LEXIS 185685 (N.D. Ga. Sep. 1, 2015) (alleging substantial assistance to
    unfair or deceptive conduct prohibited under the CFPA); *CFPB v. RD Legal Funding,*
    *LLC*, 332 F. Supp. 3d 729, 772 (S.D.N.Y. 2018) ................................................. 10

*CFPB v. Universal Debt & Payment Sols., LLC*,
    2019 U.S. Dist. LEXIS 46492 (N.D. Ga. Mar. 21, 2019) ....................................... 7

*Feldman v. Allegheny Int'l, Inc.*,
    850 F.2d 1217 (7th Cir. 1988) ............................................................... 5, 6

*Gebardi v. United States*,
    287 U.S. 112 (1932); *United States v. Hoskins*, 902 F.3d 69, 84–85 (2d Cir. 2018) ........... 10

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)........................................................................ 11

*King v. Cooke*,
    26 F.3d 720 (7th Cir. 1994) ................................................................ 3, 6

*Kleinhans v. Lisle Sav. Profit Sharing Tr.*,
    810 F.2d 618 (7th Cir. 1987) ................................................................. 5

*McCoy v. Iberdrola Renewables, Inc.*,
    760 F.3d 674 (7th Cir. 2014) ............................................................... 3, 5

*Member Select Ins. Co. (AAA) v. Cub Cadet, LLC*,
    2017 U.S. Dist. LEXIS 19780 (N.D. Ind. Feb. 13, 2017) ....................................... 4

*Park v. City of Chi.*,
    297 F.3d 606 (7th Cir. 2002) ................................................................. 3

*Sanders v. Venture Stores, Inc.*,
    56 F.3d 771 (7th Cir. 1995) .................................................................. 5

*Sound of Music Co. v. Minn. Mining & Mfg. Co.*,
    477 F.3d 910 (7th Cir. 2007) ................................................................. 3

*Thomas v. Dart*,
    39 F.4th 835 (7th Cir. 2022) ................................................................. 7

*United States v. Summit, Inc.*,
    2022 U.S. Dist. LEXIS 104183 (N.D. Ind. Jan. 6, 2022) ....................................................... 9

*Verhein v. S. Bend Lathe, Inc*.,
    598 F.2d 1061 (7th Cir. 1979) ....................................................................................................... 7

*Vitrano v. United States*,
    721 F.3d 802 (7th Cir. 2013) ......................................................................................................... 4

*Waring v. Geodis Logistics LLC*,
    2019 U.S. Dist. LEXIS 127067 (C.D. Cal. July 29, 2019)........................................................... 4

*In re Zillow Grp., Inc. Sec. Litig*.,
    2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ........................................................................ 10

**Statutes**

12 U.S.C. § 5531 ............................................................................................................................ 7

12 U.S.C. § 5531(b) ........................................................................................................................ 8

12 U.S.C. § 5536 ............................................................................................................................ 9

12 U.S.C. § 5563 ...................................................................................................................... 8, 10

12 U.S.C. § 5563(b)(1)(D) ............................................................................................................. 8

12 U.S.C. 5563(b)(4) .................................................................................................................. 8, 9

15 U.S.C. § 45m(1)(B)................................................................................................................... 11

**Internet Sources**

Ori Lev and Stephen Lilley, *Substantial Assistance: The CFPB's New Favorite Tool*, Law360
    (July 20, 2016, 12:21 PM),
    https://www.law360.com/consumerprotection/articles/819188/substantial-assistance-the-
    cfpb-s-new-favorite-tool?copied=1 ......................................................................................... 8

Proposed Consumer Financial Protection Agency: Implications for Consumers and the FTC:
    Hearing Before the H. Comm. on Energy & Com., 111th Cong. 60 (2009) ........................... 7

**Federal Rules of Civil Procedure**

Rule 15 ............................................................................................................................................ 6

Rule 15(a) ........................................................................................................................................ 3

Rule 15(a)(2) ................................................................................................................................... 6

Defendant John T. Danaher ("Danaher") respectfully submits this memorandum of law in opposition to Plaintiff Consumer Financial Protection Bureau's ("CFPB" or the "Bureau") motion for leave to amend the complaint ("Motion," ECF #79).

## PRELIMINARY STATEMENT

In an implicit concession that its lone claim against Danaher is unprecedented and statutorily unfounded, the CFPB now seeks to amend its complaint to advance another unprecedented theory of individual liability under the Consumer Financial Protection Act ("CFPA"). Mere days after responding to Danaher's motion to certify for immediate interlocutory appeal this Court's order denying Danaher's motion to dismiss ("Motion for Certification," ECF #69), the CFPB moved for leave to amend its complaint to assert a claim that Danaher substantially assisted TransUnion Interactive, Inc. ("TUI") in *its* alleged violation of the consent order dated January 3, 2017, between the CFPB and Corporate Defendants (the "Consent Order"). ECF #79-1, Proposed First Am. Compl. ("PFAC") ¶¶ 190, 244.

*First*, leave to amend should be denied because the Bureau's request is unjustifiably delayed, and is unsupported by the interests of justice. No new facts or legal authorities justify the Bureau's failure to include a "new" claim: The Bureau's Motion ignores that the PFAC includes no new substantive allegations, reflects no new theory of the case, and does nothing to change the Bureau's statutory authority. It strikes of an attempt to interfere with the interlocutory appeal process, which threatens its initial claim against Danaher. The Bureau apparently hopes to moot the Motion for Certification, or at least slow down appellate review of its original claim against Danaher by adding a new claim that is substantively no different than the deficient claim the Bureau initially filed. Granting leave to amend would prejudice Danaher and waste judicial resources by subjecting him and the Court to another costly, time-consuming round of motion-to-dismiss briefing.

1

*Second*, the Court should reject the Bureau's proposed amendment for seeking to add a futile claim that will not survive a motion to dismiss. The CFPA prohibits the provision of substantial assistance to unfair or deceptive acts or practices. It does not extend to substantial assistance for violations of consent agreements to which the alleged assistant has not consented. The CFPB has never in its history predicated a substantial assistance claim on the violation of a consent order. And based on a thorough review of the case law, neither has any other enforcement agency. Such an unprecedented theory of liability should be considered futile under the applicable legal standard. The Motion should be denied.

## BACKGROUND

On April 12, 2022, the CFPB filed a complaint against TUI, Trans Union, LLC ("TULLC"), TransUnion ("TU," together with TUI and TULLC, "Corporate Defendants"), and Danaher (the "Complaint," ECF #1). In the Complaint, the Bureau asserted causes of action against Corporate Defendants for alleged violations of the Consent Order stipulated to by the CFPB and Corporate Defendants dated January 3, 2017 (the "Consent Order," ECF #1-1), for deceptive acts and practices, and for violations of the Electronic Fund Transfer Act and CFPB regulations. It also alleged separate counts against TULLC and TU for providing substantial assistance to TUI in connection with its alleged violations of the Consent Order and alleged deceptive acts and practices. Finally, the Bureau asserted a single cause of action against Danaher for allegedly violating the Consent Order.

After this Court denied Danaher's motion to dismiss in an order dated November 18, 2022 (the "Order," ECF #52), Danaher moved this Court to certify its Order for immediate interlocutory appeal on December 19, 2022 ("Motion for Certification," ECF #69). The Bureau filed its opposition to Danaher's Motion for Certification on January 20, 2023 ("Certification Opposition," ECF #78), and filed the instant motion just four days later.

## LEGAL STANDARD

"Although Federal Rule of Civil Procedure 15(a) instructs that leave to amend shall be freely given 'when justice so requires,' a district court may deny a plaintiff leave to amend if 'there is undue delay, bad faith or dilatory motive, . . . or undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007) (quoting *Park v. City of Chi.*, 297 F.3d 606, 612 (7th Cir. 2002) (alterations omitted)). "[The] party seeking amendment carries the burden of proof in showing that no prejudice will result to the non-moving party." *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994).

## ARGUMENT

### A.     The Bureau's Delay in Asserting its Substantial Assistance Claim is Inexplicable Except as a Tactic.

The most plausible reading of the record is that the CFPB seeks to amend its complaint to thwart Danaher's interlocutory appeal through procedural maneuvering instead of litigating on the merits. When a plaintiff's "unexplained delay" in amending its complaint "looks more like procedural gamesmanship than legitimate ignorance or oversight," leave to amend must be denied. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014).

The timing and content of the Bureau's filings in this case help reveal the genesis of the instant motion. Nearly a year into this litigation, and several months after defending its Complaint against defendants' motions to dismiss, the Bureau sought leave to amend only after filing its Certification Opposition, in apparent recognition of the merits of Danaher's strong case on appeal. In its Certification Opposition, the Bureau asserted its intention to amend its Complaint and argued that its "added claim will establish an alternative ground for liability against Danaher. And since this additional claim will be unaffected by the issue presented for interlocutory appeal, the

3

Bureau's litigation would continue against Danaher, and the issue presented is not controlling." Certification Opp'n at 4 n.1. Nowhere, however, does the Bureau argue that the "added claim" is actually an alternative ground for liability. The "added claim" is based on the same underlying factual allegations against Danaher and Corporate Defendants, the same alleged theory of harm, and the same statutory authority that existed at the time the Bureau investigated Corporate Defendants and later filed the original Complaint against Corporate Defendants and Danaher. Had the Bureau believed those same alleged facts constituted an *alternative* theory of liability, presumably the Bureau would have presented this claim when it filed the original Complaint. The Bureau's failure to include this new claim in the original Complaint—especially in combination with the fact that the Bureau has not alleged any new facts—strongly implies that inclusion of the "added claim" is not to sustain an alternative theory of the case but to avoid the Motion to Certify.

The Court should not reward the Bureau's procedural maneuvers by permitting amendment now. "Proposed amendments that clearly try to avoid unfavorable consequences on the merits or gain a tactical advantage are brought in bad faith" and should be rejected. *Member Select Ins. Co. (AAA) v. Cub Cadet, LLC*, 2017 U.S. Dist. LEXIS 19780, at *6 (N.D. Ind. Feb. 13, 2017) (citing *Vitrano v. United States*, 721 F.3d 802, 807 (7th Cir. 2013)); *see also Waring v. Geodis Logistics LLC*, 2019 U.S. Dist. LEXIS 127067, at *16-17 (C.D. Cal. July 29, 2019) (denying amendment where context indicated plaintiff's intent to manipulate jurisdiction).

Delay is undue (and leave unjustified) where "the factual basis of [a new] claim is virtually identical to the factual basis of [an existing claim]," such that the plaintiff could have brought the new claim "at the time it filed its original complaint if it had prepared for this litigation with the appropriate foresight." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). This is especially so when, as here, the plaintiff "has offered no explanation for waiting." *Id.* at

861; *see also Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995) (same); *Kleinhans v. Lisle Sav. Profit Sharing Tr.*, 810 F.2d 618, 625 (7th Cir. 1987) (same).

The CFPB admits that "the proposed new claim against Danaher relies on substantially the same facts and conduct as existing Count II." Pl.'s Br. in Supp. of Mot. to Amend, ECF #80 at 4. Yet the Bureau's Motion "presented no excuse for omitting" its new claim. *See McCoy*, 760 F.3d at 687. Instead, the Bureau vaguely states that its new claim is based on "a review of the record and the evidence in the Bureau's possession," the very same record and evidence the Bureau had when it filed its initial Complaint. Pl.'s Br. at 3. The investigative record and evidence underlying the claims against Danaher has been in the Bureau's possession for years: it began investigating Corporate Defendants' compliance with the Consent Order in October 2018, and asserted they were violating the Consent Order by May 2019. Compl. ¶ 29. And the Bureau was clearly familiar with the availability of a substantial-assistance theory of liability—its original Complaint contains substantial assistance claims against both TU and TULLC. *See* Compl. ¶¶ 225, 235. Hence, its delay in bringing such a claim against Danaher now is inexcusable. *See Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1226 (7th Cir. 1988) (denying leave to amend where plaintiff "gave no explanation why this theory could not have been alleged sooner, nor can we imagine one, since *the facts upon which it is predicated had been in the complaint all along*" (emphasis added)).

The Bureau insists that "delay is generally an insufficient reason to deny a motion for leave to amend absent a showing of prejudice." Pl.'s Br. at 4. But courts have made clear that Rule 15(a)(2) "is not a license for carelessness or gamesmanship," and that prejudice may accrue as against a defendant's "interest in speedy resolution of their disputes without undue expense." *Feldman*, 850 F.2d at 1225. Moreover, the concern for unfair prejudice is so great in the context of Rule 15 motions that "[the] party seeking amendment carries the burden of proof in showing

that no prejudice will result to the non-moving party." *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). Danaher stands to be unfairly prejudiced by the Bureau's amendment here: if the Bureau is permitted to file its PFAC, he will be denied appellate review of a threshold question of law, face yet another costly round of motion-to-dismiss briefing, and continue to face legal exposure and harm to his reputation over conduct he allegedly engaged in almost six years ago—a year after retiring.

The Bureau also claims its amendment will serve "the interests of justice . . . to ensure that Danaher is held accountable." Pl.'s Br. at 7. This statement wrongly prejudges the issues and reflects the Bureau's concern that its original theory of enforcement is not credible; if it were, and the Bureau proved its case, Danaher would be held accountable with or without an amendment. And if the Bureau had been keen to hold Danaher accountable throughout its investigation into TransUnion, it could have attempted to name him as a Respondent in the Consent Order, and there would be no doubt as to its authority to enforce the Consent Order against him; instead, it entered a stipulation with Corporate Defendants that the order is only "binding upon . . . the parties thereto." *See* ECF #1-2 ("Stipulation") ¶ 7.

## B. Amendment Should Not Be Permitted Because the Bureau's New Cause of Action is Futile.

Apart from the Bureau's unjustified delay in seeking to amend its complaint, the Court should deny its Motion because the amendment is futile. An "[a]mendment [to a complaint] is futile when it seeks to add a new claim that does not allege a viable theory of liability." *E.g.*, *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022); *see also, e.g.*, *Verhein v. S. Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979) ("[T]he court may deny leave to amend where . . . the party moving to amend has not shown that the proposed amendment has substantial merit." (internal citation omitted)). Neither the CFPB nor any court in the United States has considered—let alone

6

held—that a person can be held liable for providing substantial assistance to another's violation of a consent order. Ever. Such a theory of liability is not viable: it lacks any basis in the statute or case law and defies common sense. This issue would be explored more fully in a motion to dismiss should the Court allow the amendment; that should be unnecessary.

1.      There is No Statutory Basis for the Bureau's Substantial Assistance Claim.

The CFPA prohibits the provision of substantial assistance to a covered person or service provider in the commission of unfair, deceptive, or abusive acts or practices ("UDAAP"). *See* 12 U.S.C. §§ 5531 ("Prohibiting unfair, deceptive, or abusive acts or practices."), 5536(a)(3) (limiting substantial assistance liability to underlying violations of § 5531); Proposed Consumer Financial Protection Agency: Implications for Consumers and the FTC: Hearing Before the H. Comm. on Energy & Com., 111th Cong. 60 (2009) (statement of Fed. Trade Comm'n) (noting the proposed FCPA "authorizes the Commission to take action against those who assist others in engaging in unfair or deceptive acts or practices"); *see also, e.g.*, *CFPB v. Universal Debt & Payment Sols., LLC*, 2019 U.S. Dist. LEXIS 46492, at *51 (N.D. Ga. Mar. 21, 2019) (characterizing § 5536(a)(3) as prohibiting "knowingly or recklessly provid[ing] substantial assistance to a covered person in its commission of unfair, deceptive, or abusive acts or practices" (internal quotation marks omitted)). Ori Lev and Stephen Lilley, *Substantial Assistance: The CFPB's New Favorite Tool*, Law360 (July 20, 2016, 12:21 PM), https://www.law360.com/consumerprotection/articles/819188/substantial-assistance-the-cfpb-s-new-favorite-tool?copied=1 ("Congress made clear that substantial assistance claims must be based on UDAAP violations."). While the Bureau is empowered under the CFPA to define what constitutes a UDAAP either through rulemaking, *see* 12 U.S.C. § 5531(b), or hearings and adjudication proceedings, *see id.* § 5563, it does not have carte blanche to define UDAAPs through consent orders, the terms of which are limited only by the agreement of the parties and not by any procedural safeguards or judicial review.

7

The CFPB's substantial assistance claim against Danaher presupposes that TUI's alleged violations of Paragraph 40 of the Consent Order, which Danaher allegedly assisted, constitute UDAAPs, *ipse dixit*, based on an implausible interpretation of the CFPA.  In its Motion, the CFPB disguises its giant leap in logic as a small step, asserting that, because "the Consent Order is an administrative consent order issued by the Bureau pursuant to . . . Section 5563[, i]t is therefore an 'order issued under section 5531' of the CFPA."  Pl.'s Br. at 5 n.2.  But not all orders issued pursuant to Section 5563 are created equal.  The bulk of Section 5563 sets up procedures for administrative "hearings and adjudication proceedings" and the issuance of cease-and-desist orders.  *See* 12 U.S.C. § 5563.  Critically, the issuance of a cease-and-desist order requires that "the Bureau find[] that any violation specified in the notice of charges has been established" "upon the record."  *See* 12 U.S.C. § 5563(b)(1)(D).  Given the constraints on the Bureau's authority in issuing cease-and-desist orders—including the availability of judicial review—it is easy to see how conduct prohibited by such an order would be endowed with the force of law as a UDAAP, similar to violative conduct spelled out in duly issued agency regulations.

By contrast, sub-section (b)(4) of Section 5563 carves out "order[s] issued with the consent of the person concerned" from the procedural protections available to parties to ordinary cease-and-desist orders, including judicial review.  *See id.* § 5563(b)(4).  Indisputably, the Consent Order at issue here belongs to this category, as stipulated by the CFPB and Corporate Defendants.  *See* Stipulation ¶ 3 ("[T]he Consent Order will be deemed an 'order issued with the consent of the person concerned' under 12 U.S.C. § 5563(b)(4).").  But the Stipulation expressly states that "Respondents agree to the issuance of the Consent Order, ***without admitting or denying any of the findings of fact or conclusions of law***."  Stipulation ¶ 2 (emphasis added).  The conduct provisions in the Consent Order thus reflect only the agreement of the CFPB and Corporate

Defendants, and leave open the question of whether the conduct at issue in the Consent Order is actually a violation of law (or a UDAAP). And while those provisions are undoubtedly enforceable as to Corporate Defendants, *see* Consent Order ¶ 82, they cannot alone constitute UDAAPs as to all other people such that their violation gives rise to substantial assistance liability under Section 5536. *See United States v. Summit, Inc.*, 2022 U.S. Dist. LEXIS 104183, *25 (N.D. Ind. Jan. 6, 2022) (declining to hold violations of consent agreement constitutes underlying statutory).

The Bureau's own filings in this case further demonstrate the nonviability of its purported substantial assistance claim against Danaher. For example, Count III of the Complaint charges that Corporate Defendants engaged in deceptive acts and practices independent from the Consent Order violations alleged in Count I. Compl. ¶¶ 189-215. In turn, the Bureau's substantial assistance claims against TULLC and TU are separately predicated on their alleged assistance to TUI *in its commission of the UDAAPs* alleged in Count III. *See* Compl. ¶¶ 224, 235. In its substantial assistance claim against Danaher, though, the PFAC omits such an allegation, alleging only that he provided substantial assistance to TUI's Consent Order violations. *See* PFAC ¶ 244. This inconsistency—in conjunction with the fact that the Bureau presumably considered and ruled out including a substantial assistance claim against Danaher in its original Complaint—belies the viability of the new claim and underscores once more the Bureau's procedural tactics in seeking leave to amend.

2. <u>The Bureau's Unprecedented Substantial Assistance Claim Would Violate Basic Principles of Statutory Construction</u>

Relevant case law (or lack thereof) reinforces the limited scope of substantial assistance claims. The CFPB has ***never*** pursued a substantial assistance claim arising out of alleged violations of a consent order. The CFPB has only ever pursued substantial assistance claims for aiders and abettors of UDAAPs proscribed by law or regulation. *See, e.g.*, *CFPB v. Universal*

*Debt & Payment Sols.*, 2015 U.S. Dist. LEXIS 185685 (N.D. Ga. Sep. 1, 2015) (alleging substantial assistance to unfair or deceptive conduct prohibited under the CFPA); *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 772 (S.D.N.Y. 2018) (same); *see also In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) (declining to find that RESPA violations amounted to *per se* UDAAP violations thus rejecting Bureau's CFPA theory of liability). And undersigned counsel could not identify a single case where ***any*** administrative agency—not the Bureau, not the FTC, and not any other agency—has brought a claim for providing substantial assistance to a violation of a consent order. The Bureau's attempt to do so here represents an unprecedented example of overreach and cannot succeed.

Indeed, the Bureau's theory would violate at least two well-settled principles of statutory construction. First, the failure of a statute (here, 12 U.S.C. § 5563) to punish a category of persons (here, non-consenting parties) for a particular offense (here, violation of a consent order) reflects an affirmative legislative policy to leave such persons unpunished. *See, e.g.*, *Gebardi v. United States*, 287 U.S. 112, 123 (1932); *United States v. Hoskins*, 902 F.3d 69, 84–85 (2d Cir. 2018). Following similar principles of interpretation in the context of this government enforcement action, the Bureau may not use the equivalent of an aiding-and-abetting provision to frustrate congressional intent. *Cf.* 15 U.S.C. § 45m(1)(B) (prohibiting the FTC from seeking civil penalties for knowing violations of consent orders against non-consenting parties).

Second, and relatedly, the Bureau's substantial assistance theory violates the principle of construction that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). The Bureau's substantial assistance claim against Danaher rests on a formalistic reading of Section 5536(a)(3) that would extend the CFPA's

sphere of liability beyond where any court has taken it, and beyond where any enforcement agency has ever tried to go.

As illustrated above, the Bureau's novel theory of liability assumes that the specific provisions of a CFPB consent order carry the same legal force as laws, regulations, or administrative orders that are issued according to proper legislative or administrative procedures and subject to judicial review. Unlike laws, regulations, and administrative adjudicative orders, though, there is no limit to the type of conduct that a consent order can proscribe or require. A consent order simply reflects whatever the consenting parties choose to negotiate. Indeed, the Bureau may well have reason to impose conduct provisions proscribing otherwise-lawful conduct with the consent of a respondent. According to the CFPB now, not only is the consenting party bound by the terms of such an agreement, but also, any person doing business with the consenting party must not provide substantial assistance to the bound party in violating those terms—even if the violative conduct would be lawful but for the consenting party's agreement to be bound.

In short, to avoid an absurd result here and align with the legislative intent behind Section 5536(a)(3), it is necessary for the Court to apply a statutory interpretation that limits the reach of substantial assistance liability to those who provide substantial assistance to the commission of a UDAAP that violates a relevant law, regulation, or order issued pursuant to on-the-record administrative proceedings accompanied by full procedural protections. Justice favors—and statutory canons demand—the Court prevent the Bureau from seeking this sort of roundabout liability.

11

## **<u>CONCLUSION</u>**

For the reasons set forth above, Danaher respectfully requests that the CFPB's Motion for Leave to File an Amended Complaint be denied.

Dated: February 10, 2023                    Respectfully Submitted,


                                            By: *Jeffrey H. Knox*_____


Ronald S. Safer                             Jeffrey H. Knox*
RILEY SAFER HOLMES & CANCILA LLP            Abram J. Ellis*
70 W. Madison Street, Suite 2900            Nicole A. Palmadesso*
Chicago, IL 60602                           SIMPSON THACHER & BARTLETT LLP
rsafer@rshc-law.com                         900 G Street, NW
Telephone: (312) 471-8736                   Washington, DC 20001
Facsimile: (312) 471-8701                   jeffrey.knox@stblaw.com
                                            aellis@stblaw.com
                                            nicole.palmadesso@stblaw.com
                                            Telephone: (202) 636-5500
                                            Facsimile: (202) 636-5502


                                            *Counsel for Defendant John T. Danaher*

                                            *Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.


By: *Jeffrey H. Knox*
*Counsel for Defendant John T. Danaher*