UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                Plaintiff,<br><br>v.<br><br>TRANSUNION, TRANS UNION LLC, TRANSUNION INTERACTIVE, INC., and JOHN T. DANAHER<br><br>                Defendants. | Case No. 1:22-cv-1880<br><br>District Judge Elaine E. Bucklo |

**JOINT MOTION TO STAY ALL PROCEEDINGS PENDING U.S. SUPREME COURT DECISION IN *CONSUMER FINANCIAL PROTECTION BUREAU V. COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LIMITED***

      Defendants TransUnion, Trans Union LLC, and TransUnion Interactive, Inc. (collectively, "TransUnion") and John T. Danaher ("Danaher" and, with TransUnion, "Defendants") respectfully request an order staying all proceedings in this action until the U.S. Supreme Court issues its decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Limited*, No. 22-448. Pursuant to this Court's Procedures for Motion Practice, counsel for Defendants certify that they consulted with counsel for Plaintiff Consumer Financial Protection Bureau ("Plaintiff" or "CFPB") prior to filing this Motion. Plaintiff's counsel indicated that Plaintiff opposes the relief sought herein.

      In support of their Joint Motion to Stay All Proceedings Pending the U.S. Supreme Court's Decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Limited* ("Motion"), Defendants state as follows:

      1.     On April 12, 2022, Plaintiff filed its complaint in the above-captioned case against TransUnion and Danaher (the "Complaint"), alleging that TransUnion violated certain provisions

of a January 3, 2017 Consent Order between the CFPB and TransUnion, and that TransUnion also allegedly violated the Consumer Financial Protection Act of 2010 ("CFPA"), the Electronic Fund Transfer Act ("EFTA"), the Fair Credit Reporting Act ("FCRA"), and the implementing regulations of the EFTA and FCRA. *See* ECF No. 1. The Complaint also alleged that Danaher violated the CFPA by failing to ensure TransUnion Interactive, Inc. complied with the terms of the Consent Order.

2. On July 8, 2022, Defendants filed motions to dismiss the Complaint. Among other things, TransUnion argued that the Complaint should be dismissed because the CFPB's funding mechanism violates the Appropriations Clause, and thus, the CFPB lacked authority to use those funds to pursue this action. *See* ECF No. 29 at 26–27. In support of its motion, TransUnion cited the U.S. Court of Appeals for the Fifth Circuit's decision in *Community Financial Services Association of America, Limited v. CFPB*, 51 F.4th 616 (5th Cir. 2022), which held that the CFPB's funding structure "ran afoul of the separation of powers embodied in the Appropriations Clause," ECF No. 45 (Notice of Supplemental Authority) (quoting *Cmty. Fin. Servs.*, 51 F.4th at 640); *see also* ECF No. 29 at 26–27. Danaher joined this argument. *See* ECF No. 33 at 4 n.2.

3. On November 18, 2022, this Court denied TransUnion's motion to dismiss. While the Court acknowledged the Fifth Circuit's recent decision in *Community Financial Services*, the Court ultimately agreed with courts that reached the opposite conclusion. *See CFPB v. TransUnion*, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022) (Bucklo, J.).

4. Meanwhile, on November 14, 2022, the CFPB petitioned the U.S. Supreme Court for review of the Fifth Circuit's decision in *Community Financial Services*. Pet., No. 22-448 (Nov. 14, 2022), https://www.supremecourt.gov/DocketPDF/22/22-448/246429/20221114155607407_ No.%20CFPB%20et%20al.%20v.%20CFSA%20et%20al.pdf. The petition asked the Supreme

Court to review, on an expedited basis, the Fifth Circuit's holding that the statute providing funding to the CFPB violates the Appropriations Clause. *See id.* at I (Question Presented). Among other things, the CFPB argued that Supreme Court review is "warranted because of the immense legal and practical significance of the decision," which "threatens the validity of all past CFPB actions," and it cited this action as an example of a pending case implicated by the Fifth Circuit's decision. *See id.* at 29; *see also* Reply Br. for Pet'rs at 2, No. 22-448 (Feb. 1, 2023), https://www.supremecourt.gov/DocketPDF/22/22-448/253698/20230201142754169_22-448%20CFPB%20v.%20CFSA.pdf ("The decision below frustrates the CFPB's ongoing activities, [and] calls into question more than a decade's worth of its past actions . . . ."). Indeed, the CFPB admits that the decision "has already affected more than half of the Bureau's 22 active enforcement actions"—"[f]ive have been stayed," and "[m]otions for relief based on the decision [] are pending in seven others." Reply Br. for Pet'rs at 9–10.

5. On February 27, 2023, the U.S. Supreme Court granted the CFPB's petition for a writ of certiorari in *Community Financial Services*. The case is scheduled to be heard by the U.S. Supreme Court next term. A decision could potentially be issued as early as the end of this year, and almost certainly no later than June 2024.

6. This Court has the power to stay these proceedings, as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The court has broad discretion in exercising its authority to stay." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045–46 (N.D. Ill. 2012). In determining whether to grant a stay, the court "balance[s] the competing interests of the parties and the interest of the judicial system" by considering three factors: "(1) whether a stay

will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Farias v. R.R. Donnelley & Sons, Co.*, 2021 WL 5278711, at *1 (N.D. Ill. Apr. 26, 2021) (Bucklo, J.) (quoting *Berkeley*IEOR v. Teradata Operations, Inc.*, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7, 2019)). Each of these factors supports granting a stay in this case pending the U.S. Supreme Court's decision in *Community Financial Services*.

7. A stay is warranted because the U.S. Supreme Court's forthcoming decision likely will simplify the issues in this action. *Community Financial Services* involves a potentially dispositive question of law under the Appropriations Clause that, as TransUnion argued in connection with its motion to dismiss, would require dismissal of this entire lawsuit if the Supreme Court affirms the Fifth Circuit's decision. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) ("Stays are often deemed appropriate where . . . the issue is a threshold one, such as . . . standing." (internal citations omitted)); *Farias*, 2021 WL 5278711, at *1 (Bucklo, J.) (staying action pending resolution of two cases before the Illinois Appellate Court and one before the Seventh Circuit, all of which addressed statute of limitations issues that were applicable to plaintiff's claim). Indeed, the CFPB conceded as much: its petition admits that if the Supreme Court "were to hold that the entirety of Section 5497 is unconstitutional, . . . the CFPB would be obliged to halt further spending of funds transferred under Section 5497," including the prosecution of this lawsuit. Pet. at 25.

8. A stay is especially appropriate here because the Supreme Court's ultimate reasoning in *Community Financial Services* could have unique implications for the prosecution of this lawsuit. As the Fifth Circuit held, Congress not only ceded direct control over the CFPB's

4

budget by insulating it from the appropriations process, but also "ceded *indirect control* by providing that the [CFPB's] self-determined funding be drawn from a source that is itself outside the appropriations process," *i.e.*, the Federal Reserve. *Cmty. Fin. Servs.*, 51 F.4th at 638–39 (emphasis in original). This degree of double-insulation was particularly troublesome to the Fifth Circuit given the "capacious portfolio of authority" of the CFPB which, unlike the Federal Reserve and other self-funded agencies, "wields vast rulemaking, enforcement, and adjudicatory authority over a significant portion of the U.S. economy." *Id.* at 638, 640; *see also Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2202 n.8 (2020) ("[T]he CFPB is in an entirely different league [from institutions like the Federal Reserve]. It acts as a mini legislature, prosecutor, and court, responsible for creating substantive rules for a wide swath of industries, prosecuting violations, and levying knee-buckling penalties against private citizens."); Opp'n at 22–24, No. 22-448 (Jan. 13, 2023), https://www.supremecourt.gov/DocketPDF/22/22-448/252221/20230113130438937_22-448%20bio.pdf (comparing agencies like the Post Office and National Mint, which "are funded by *fees they charge for services they render*" and agencies like the OCC, FDIC, and Federal Reserve, which "are funded by *assessments they charge to entities they regulate*," with the CFPB, which "is funded by money already in the federal fisc for reasons *entirely unrelated to its own conduct*" (emphases in original)). Unlike the Federal Reserve and the FDIC, the CFPB does not derive funding from assessments on the entities it regulates. It is thus "triple insulated" as to Defendants rather than "double insulated." If the Supreme Court determines that it is permissible for the CFPB to draw on funding through bank assessments that are obtained via the Federal Reserve (rather than through annual congressional appropriations bills) because of the Federal Reserve's assessments on regulated entities, the CFPB's funding structure would be constitutional only as to the financial institutions assessed by the Federal Reserve. TransUnion is not among

them, and Danaher is not an institution at all.  In other words, the U.S. Supreme Court's final word on permissible degrees of insulation from the appropriations process may have unique implications for Defendants.

9.  A stay is also warranted because it would obviate the need for the parties to incur the costs of discovery while the U.S. Supreme Court considers this potentially dispositive constitutional question.  No discovery would be required to resolve this action if the U.S. Supreme Court affirms the Fifth Circuit's decision.  It thus would not make sense for the parties or this Court to devote time and resources to conducting and supervising discovery, when such efforts could soon be rendered moot.

10. By contrast, a stay will not prejudice Plaintiff.  This action has been pending for less than a year, and there has been little activity in the case since the Court denied Defendants' motions to dismiss.  While the parties submitted a Rule 26(f) planning report, the Court struck that report and the related scheduling conference pending resolution of Danaher's motion to amend the Court's November 18, 2022 order to include certification of a question for interlocutory appeal.  *See* ECF Nos. 73, 77.  Meanwhile, Plaintiff filed a motion for leave to file an amended version of its complaint, which the Court indicated it would resolve concurrently with Danaher's motion.  *See* ECF No. 83.  Discovery has hardly commenced in this action—although the parties have exchanged initial disclosures, the CFPB only recently served its first discovery requests on TransUnion on February 16.  No other party has served any discovery in this case, and the CFPB has served no discovery requests on Danaher.  Moreover, if the Court grants Plaintiff's request to file an amended complaint, Danaher intends to file a motion to dismiss, which may impact the disposition of the case, the case's overall schedule, or (at a minimum) discovery in this action.  *See* ECF No. 84 at 6–7.  A stay would pause this litigation for no more than 16 months, as the U.S.

Supreme Court is expected to render a decision by no later than next June, and potentially much sooner. Accordingly, a temporary stay of any discovery will not adversely affect Plaintiff's interests. *See Nat'l Police Ass'n, Inc. v. Gannett Co.*, 2021 WL 5364207, at *2 (S.D. Ind. Oct. 25, 2021) ("[W]hile a stay necessarily slows the progression of a case, a short delay on its own does not constitute undue prejudice."); *Paul v. Aviva Life & Annuity Co.*, 2009 WL 2244766, at *1 (N.D. Ill. July 27, 2009) (any potential prejudice was minimal where case had only been pending for five months and discovery had yet to begin).

11. A stay of discovery is also unlikely to prejudice Plaintiff because Plaintiff has already collected documents and other information as part of its investigation into TransUnion and Danaher. Thus, there can be no argument that discovery of Defendants will become stale as a result of any stay.

12. To the extent Plaintiff may argue that the U.S. Supreme Court is not likely to affirm the Fifth Circuit's ruling, that is irrelevant. "[S]everal courts in this district have rejected this very argument." *Farias*, 2021 WL 5278711, at *2 (Bucklo, J.) (rejecting plaintiff's argument that none of the appeals is likely to succeed and thus that there is little chance that the outcome of the appeals will streamline the issues). Even if the U.S. Supreme Court's decision does not resolve all of the issues in this lawsuit, "there is little reason to proceed with discovery on those issues which the . . . decision will not affect while delaying discovery on intricately related issues which . . . may be resolved by the . . . decision. It is far more efficient to investigate all related issues at the same time." *Altounian Builders Inc. v. Int'l Union of Bricklayers & Allied Craft Workers, Loc. No. 20, AFL-CIO*, 228 F. Supp. 2d 915, 917 (N.D. Ill. 2002) (Bucklo, J.) (staying proceedings pending NLRB decision). That is particularly true where, as here, the "delay will prejudice neither party's interests and may streamline litigation in the long run." *Id.*

13. Moreover, at least one other court has explicitly rejected this argument and stayed another lawsuit brought by the CFPB pending the U.S. Supreme Court's resolution of *Community Financial Services*. That court reasoned that "the Supreme Court may address the broader issue of the CFPB's standing to bring enforcement actions," and "Plaintiffs' claims are inextricably linked to CFPB rules and regulations, which themselves may be implicated by a Supreme Court decision." *CFPB v. MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *2 (S.D.N.Y. Dec. 9, 2022). Indeed, this action "may dramatically change if the Supreme Court affirms the Fifth Circuit's decision, as CFPB rules and regulations are integral to nearly all of Plaintiffs' claims." *Id.*; *see also id.* ("The fact that the CFPB and the Solicitor General cite the instant case within the Petition only underscores the propriety of a stay here."). Similar stays have been granted in at least five other actions brought by the CFPB (three of which the CFPB did not oppose). *See* Reply Br. for Pet'rs at 10 n.4 (citing cases). This Court should do the same.

14. Therefore, Defendants respectfully request that this Court stay this action pending the U.S. Supreme Court's decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Limited*, No. 22-448, and vacate all deadlines, including the deadline to answer the Complaint, which is currently due seven days after the Court's decision on Danaher's motion to amend the Court's November 18 order and the CFPB's motion for leave to file an amended complaint, as well as all discovery deadlines. *See* ECF Nos. 77 & 83. Defendants will file a status report within 14 days of the U.S. Supreme Court's decision.

Dated: February 28, 2023          Respectfully submitted,

By:    */s/ Valerie L. Hletko*

| | |
|---|---|
| Terri L. Mascherin<br>Megan B. Poetzel<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60654<br>Tel.: (312) 222-9350<br>Email: tmascherin@jenner.com<br>Email: mpoetzel@jenner.com | Valerie L. Hletko<br>Teena-Ann V. Sankoorikal (admitted *pro hac vice*)<br>Alyssa Vallar (admitted *pro hac vice*)<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Tel.: (202) 662-6000<br>Email: vhletko@cov.com<br>Email: tsankoorikal@cov.com<br>Email: avallar@cov.com<br><br>William E. O'Neil (admitted *pro hac vice*)<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel.: (212) 841-1000<br>Email: woneil@cov.com<br><br>*Counsel for Defendants TransUnion, Trans Union LLC, and TransUnion Interactive, Inc.* |
| Ronald S. Safer<br>RILEY SAFER HOLMES & CANCILA LLP<br>70 W. Madison Street, Suite 2900<br>Chicago, IL 60602<br>rsafer@rshc-law.com<br>Telephone: (312) 471-8736<br>Facsimile: (312) 471-8701 | Jeffrey H. Knox (admitted *pro hac vice*)<br>Abram J. Ellis (admitted *pro hac vice*)<br>Nicole A. Palmadesso (admitted *pro hac vice*)<br>SIMPSON THACHER & BARTLETT LLP<br>900 G Street, NW<br>Washington, DC 20001<br>jeffrey.knox@stblaw.com<br>aellis@stblaw.com<br>nicole.palmadesso@stblaw.com<br>Telephone: (202) 636-5500<br>Facsimile: (202) 636-5502<br><br>*Counsel for Defendant John T. Danaher* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 28, 2023, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

                                                        */s/ Valerie L. Hletko*