```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

Consumer Financial Protection  )
Bureau,                        )
                               )
       Plaintiff,              )
                               )
                               )
   v.                          )   No. 22 C 1880
                               )
                               )
TransUnion, Trans Union LLC,   )
TransUnion Interactive, Inc.,  )
and John T. Danaher,           )
                               )
       Defendants.             )

## Order

The Consumer Financial Protection Bureau ("Bureau") initiated this suit based on alleged violations of a Consent Order by TransUnion, Trans Union LLC, and TransUnion Interactive, Inc. In a motion to dismiss, defendants argued, among other things, that the Bureau's funding structure violates the Appropriations Clause of the United States Constitution and, as such, the Bureau is without power to bring enforcement actions like this one. I rejected that argument, agreeing with every court other than the Fifth Circuit to have considered the issue. Dkt. No. 52 at 12–14. Since then, the Supreme Court has granted certiorari to review the Fifth Circuit's holding that the Bureau's funding structure violates the constitution and that its enforcement actions must be

dismissed. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 2023 WL 2227658 (U.S. Feb. 27, 2023) (No. 22-448).[1] Defendants now move to stay this action until the Supreme Court rules on the issue, which will be next term at the earliest.

District courts have a well-established authority to stay proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When deciding whether a stay is warranted, three factors are relevant: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Berkeley\*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at \*5 (N.D. Ill. Mar. 7, 2019) (citing *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012)). The party seeking the stay bears the burden of showing it is appropriate. *See Hudson Specialty Ins. Co. v. Joseph*, No. 1:19-

---

[1] Even after the Supreme Court's grant of certiorari, at least one federal appellate court has ruled on the issue, finding that the Bureau's funding structure is constitutionally sound. *CFPB v. Law Offs. of Crystal Moroney, P.C.*, No. 20-3471, 2023 WL 2604254 (2d Cir. Mar. 23, 2023).

cv-6293, 2020 WL 3050251, at *2 (N.D. Ill. June 8, 2020) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)).

Defendants' primary argument is that a stay could avoid this entire litigation if the Supreme Court agrees with the Fifth Circuit. I agree that the first stay factor weighs in defendants' favor for this reason. Though the Bureau points out that the Supreme Court might find no violation of the Appropriations Clause or, even if it does, might order a less sweeping remedy than cessation of the Bureau's activities, there is at least a possibility that it will affirm the Fifth Circuit. If it does, or if it agrees with the relevant parts of the Fifth Circuit's opinion, then dismissal of this action may be required. In any event, arguments about the likelihood of success on appeal are generally rejected by courts in this district, and the Bureau offers no reason to depart from that practice here. *See Farias v. R.R. Donnelley & Sons, Co.*, No. 20 C 7468, 2021 WL 5278711 (N.D. Ill. Apr. 26, 2021) (collecting cases).

The second factor, too, favors defendants, though only slightly. That is because during the course of a stay, the parties and this court will not expend resources on this case. And in the event the Supreme Court decides that the Bureau is unconstitutionally funded and must stop all enforcement activities, then absent a stay, litigation between now and then will have been wasted. But because defendants have not identified

3

burdens beyond the general costs associated with any litigation--including the resolution of discovery disputes--this factor plays only a muted role here.

As to the third factor, defendants maintain that the Bureau will suffer no prejudice if this case is stayed. The Bureau persuasively argues, however, that a stay would unduly prejudice its ability to safeguard the public interest.[2] As a general matter, "the public has a strong interest in the vigorous enforcement of consumer protection laws." *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017). This interest is heightened where, as here, there is evidence of ongoing violations of the Consent Order. According to the Bureau, and undisputed by defendants, there have been 43 consumer complaints regarding defendants' products submitted to the Bureau and the Federal Trade Commission since the filing of this suit related to the very conduct alleged by the Bureau in this case. *See* Decl. of Bureau Employee Nicole Caprio, Dkt. No. 91-1 ¶¶ 8-13 (documenting some of these complaints).

*Landis* cautions that "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at

---

[2] Though the "public interest" is not an explicit factor in the *Landis* stay test, where one party is a governmental agency tasked with protecting the interests of consumers, the public interest becomes part of the equation.

4

255. The consumer complaints demonstrate that there is more than just a "fair possibility" of harm to consumers and to the Bureau's ability to protect the interests of those consumers. Defendants downplay these concerns by pointing out that the complaints represent a vanishingly small proportion of the number of consumers who have enrolled in TransUnion Credit Monitoring (the product at issue) during the relevant period. But even if only a relatively small number of consumer complaints have been filed with the Bureau and FTC, the "fair possibility" of harm to "some one else" triggers defendants' obligation to make out a "clear case of hardship or inequity." *Id.*[3] Defendants fail to meet that obligation, citing only the costs of litigation that may ultimately prove unnecessary.

Were I to grant the requested stay, it could last more than one year, depending on when the Supreme Court issues its opinion. In that time, if the Bureau's allegations bear out, consumers will continue to suffer harm because of defendants' unlawful conduct. That potential cost is too great to outweigh the resource-preserving benefits a stay would confer.

For the foregoing reasons, defendants' motion to stay is denied.

---

[3] Additionally, there may be other complaints filed by consumers directly with defendants. These would only come to light if discovery continues in this case.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: April 13, 2023