IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>TransUnion, Trans Union LLC, TransUnion Interactive, Inc., and John T. Danaher,<br><br>Defendants. | Case No. 1:22-cv-1880<br><br>Honorable Judge Elaine E. Bucklo |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CORPORATE DEFENDANTS' COUNTERCLAIM**

Corporate Defendants have become habitual re-drafters of the 2017 Consent Order, arguing now, as they did in their motion to dismiss the Bureau's complaint, that the plain language of the Order should mean something different from what it says. In their opposition motion, ECF No. 135 at 9 (Opp.), Corporate Defendants selectively quote the definition of "Affected Consumers" to leave out its defined class of "approximately 700,000 consumers identified by the Bureau and Respondents" who were harmed by Corporate Defendants' unlawful practice, *see* ECF No. 99-1 ¶ 3.a (Order). They offer a fanciful interpretation of the unconditional waiver contained in Paragraph 58, Opp. at 11-12, which emphatically provides that "no part of the funds may be returned," Order ¶ 58. Corporate Defendants do not stop at the Order, now even re-drafting the Bureau's First Amended Complaint (FAC) to suggest that the Bureau is seeking redress for consumers who enrolled through affiliates prior to January 3, 2017, Opp. 5, 7; the Bureau is not seeking such redress.

Putting aside Corporate Defendants' smoke and mirrors, the Counterclaim may be dismissed for a simple reason—the Bureau is not seeking the relief that Corporate Defendants claim it is. Indeed, there is no set of circumstances in which Corporate Defendants can obtain relief on their Counterclaim, and therefore this Court should dismiss the Counterclaim without leave to amend.

**I. The Counterclaim cannot state a claim for relief since the Bureau does not seek relief for any consumers who enrolled prior to January 3, 2017.**

As Corporate Defendants concede, their Counterclaim for recoupment can succeed "only if [they are] ordered to pay damages to consumers who enrolled pre-2017 in credit-related products, including those who enrolled through affiliates." Opp. at 9; *see also id*. at 1 (explaining that the Counterclaim seeks recoupment "*if* Plaintiff prevails on its claims with respect to accounts enrolled through affiliates prior to 2017"). The Bureau's FAC, however, does not assert any claims with respect to accounts enrolled through affiliates prior to January 3, 2017, as the Bureau explained in its Motion to Dismiss the Counterclaim, ECF No. 130 at 11, 15 (MTD). And while the FAC contains a limited number of allegations regarding conduct unrelated to affiliate marketing prior to January 3, 2017, *see* Motion to Strike, ECF No. 127 at 11, the Bureau has amended its Rule 26(a)(1) disclosures to expressly limit its claim for redress to consumers who enrolled on or after January 3, 2017, *see* 9/28/2023 Decl. of Anjali Garg at ¶¶ 2-3, ECF No 142-1.[1] In short, the Bureau is no longer bringing any claim for relief for *any* accounts enrolled prior

---

[1] The only allegations in the FAC regarding enrollments prior to January 3, 2017, concern Corporate Defendants' marketing between 2014 and 2016 on www.annualcreditreport.com. Notwithstanding Corporate Defendants' suggestion otherwise, Opp. at 5, 7, those enrollments are unrelated to Corporate Defendants' affiliate marketing. In any event, the Bureau recently informed Corporate Defendants that it will no longer seek relief for those pre-2017 enrollments, which comprise only a nominal percentage of the 5-6 million enrollments at issue in the FAC. This should streamline the litigation.

to January 3, 2017, whether through direct or affiliate marketing channels, so the Counterclaim lacks a basis for recovery.

For the same reason, Corporate Defendants' proposed amendment of their Counterclaim would be futile. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012), *as amended* (Feb. 2, 2012) ("District courts have broad discretion to deny leave to amend where ... the amendment would be futile."). Corporate Defendants explain that they "would amend the Counterclaim to clarify that [they] seek[] recoupment only to the extent Plaintiff prevails on its claim for damages relating to any pre-2017 direct or affiliate enrollments." Opp. at 15. Given the Bureau has now made clear that it is not seeking relief for any enrollments before January 3, 2017, Corporate Defendants' amended claim would also not survive a motion to dismiss.

Accordingly, the Counterclaim should be dismissed without leave to amend.

## II. The Counterclaim also fails to overcome sovereign immunity or state a claim for relief.

This Court need not reach the other arguments laid out in the Bureau's MTD; as discussed above, there is no longer any possible controversy underlying Corporate Defendants' Counterclaim. In any event, Defendants never had a basis for relief, so even if the Court is inclined to reach these issues, the Corporate Defendants' Counterclaim should be dismissed.

To start, the Bureau has not waived sovereign immunity. As the Bureau previously explained, the APA's limited waiver of sovereign immunity does not apply here, since Corporate Defendants are seeking money damages rather than specific relief. *See* MTD at 7-9. Defendants did not respond to the Bureau's arguments explaining why sovereign immunity is not waived under § 702 of the APA, or even cite the APA, and thus waived any argument relying on this provision. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012)

(noting "a party waives an argument by failing to make it before the district court," including "an argument establishing that dismissal is inappropriate").

Nor has the Bureau waived sovereign immunity in bringing this action. Though Corporate Defendants attempt to characterize their claim as one for recoupment, they cannot establish that the Counterclaim both arises out of the same transaction or occurrence as the Bureau's claim and is aimed only at defeating the Bureau's claim. *See* MTD at 10-12. At bottom, Corporate Defendants are asking the Court to offset their liability under the Consent Order—money set aside for a specific class of defined "Affected Consumers," Order ¶¶ 2, 47—against the potential redress in this litigation—monetary relief for a different class of consumers who do not fall within the Order's definition of "Affected Consumers." What's more, notwithstanding Corporate Defendants' suggestions otherwise, the Bureau has never alleged (nor is it arguing now) that Defendants should provide redress for any consumer enrollments through affiliates prior to January 3, 2017. And to dispel Corporate Defendants' apparent confusion on this point, the Bureau expressly disclaims that it seeks redress for consumer enrollments through affiliates prior to 2017; in addition, as discussed above, the Bureau no longer seeks redress for *any* consumer enrollments prior to 2017. Thus, there cannot possibly be duplicate payments from redress paid under the Consent Order and potential redress from this action, nor can these actions possibly concern the same time periods. These actions therefore do not arise from the same transaction or occurrence, and Corporate Defendants' Counterclaim is not one for recoupment.

Finally, the Counterclaim fails on other grounds. Corporate Defendants cannot overcome the express waiver in Paragraph 58 in the Consent Order, which provides that no amount paid under the Consent Order, including the amount paid for redress, may be "returned" to Corporate Defendants. They assert, without any basis in the text of the Order or any citation to case law,

that the unconditional waiver in the Order can be refashioned to lessen their obligation in this lawsuit. *See* Opp. at 11-12. Corporate Defendants reason that they are not asking the Bureau to return the funds, but only to prevent duplicate payments (of which there are none). And though Corporate Defendants suggest the funds would not be "returned" to them, since the money would be paid to other consumers, that is a distinction without a difference. Under Defendants' approach, the money set aside for consumers harmed prior to 2017 would be used to reduce Defendants' obligation to remedy consumers harmed after 2017. The effect is the same—reducing Corporate Defendants' financial obligation under the Consent Order in violation of its express terms and the waiver in Paragraph 58.

In addition, the Counterclaim pleads no constitutional, statutory, or regulatory violation, nor any violation of the Order's terms that would give Corporate Defendants a right to the money they claim to be owed. *See* MTD at 8, 13-14. Corporate Defendants' argument rests only on an alleged difference in how the parties interpret the Order, yet Corporate Defendants cite no case law holding that a difference in interpretation of an Order, without any claim by the counterclaiming party of a breach of such an order, can provide the requisite right.

In short, Corporate Defendants have no right to recover any of the amount paid in redress under the Consent Order, and this Court may dismiss the Counterclaim on any number of the above grounds.

**CONCLUSION**

The Court should dismiss Corporate Defendants' Counterclaim without leave to amend.

Dated: September 28, 2023

Respectfully submitted,

s/ Lauren Gorodetsky
Lauren Gorodetsky
Jessica Rank Divine
Mary K. Warren
Tracy L. Hilmer
Anjali Garg
*Attorneys*

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

Telephone: (202) 435-7560 (Gorodetsky)
Telephone: (202) 435-7863 (Divine)
Telephone: (202) 435-7815 (Warren)
Telephone: (202) 435-7459 (Hilmer)
Telephone: (202) 435-9217 (Garg)

Email: lauren.gorodetsky@cfpb.gov
Email: mary.warren@cfpb.gov
Email: jessica.divine@cfpb.gov
Email: tracy.hilmer@cfpb.gov
Email: anjali.garg@cfpb.gov

*Attorneys for Plaintiff Consumer Financial Protection Bureau*