IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 22 C 1880 |
| TransUnion; Trans Union, LLC; TransUnion Interactive, Inc.; and John T. Danaher, | ) ) ) ) ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

In this action, the Consumer Financial Protection Bureau ("Bureau") alleges that TransUnion, Trans Union LLC, TransUnion Interactive, Inc. (collectively, "Corporate Defendants"), and John T. Danaher violated federal consumer financial law. Central to the Bureau's allegations is a Consent Order, ECF 99-1, effective January 3, 2017, which among other things required Corporate Defendants to set aside $13,930,000 for redress to consumers who had been harmed by the violations described therein. *See* Consent Order ¶¶ 47–51. Consistent with the terms of the Consent Order, after Corporate Defendants used those funds to pay redress to affected consumers, the remaining balance of $5,002,773.08--the "Residual Redress Payment"--was paid to the Bureau. *See*

Counterclaim, ECF 109 at 81 ¶¶ 29-31; Consent Order ¶ 50. The Consent Order also contains forward-looking Conduct Provisions, *see* Consent Order ¶ 40, alleged violation of which forms the basis for much of this action.

Pursuant to the Consent Order, Corporate Defendants were required to submit a Compliance Plan to ensure that their activities comply with federal consumer financial law and the terms of the Consent Order. *See id.* ¶¶ 41-43. Corporate Defendants maintain that they submitted a Compliance Plan on June 30, 2017, as well as an updated one on August 20, 2021, but that the Bureau never directed revisions or issued a determination of non-objection. Counterclaim ¶¶ 22-24. Defendants previously argued in a motion to dismiss that the Bureau's failure to respond to the Compliance Plan renders the Consent Order unenforceable for failure to satisfy a condition precedent. I rejected that argument and several others, including that the Bureau's claims were barred by claim preclusion because the Consent Order had already resolved the claims; that the Bureau lacks the authority to bring this suit because its funding structure is unconstitutional; and that the Bureau's suit came too late under the relevant statute of limitations. *See* ECF 52. Danaher also moved to dismiss the Bureau's claims against him, asserting among other things that he was not a party to the Consent Order and so could not be held liable for

2

its violations, and that monetary damages were unavailable against him, but I rejected those arguments as well.[1] *Id.*

Corporate Defendants filed a counterclaim asserting that they are entitled to specific relief in the amount of the Residual Redress Payment of $5,002,773.08. Alternatively, the counterclaim seeks a setoff or recoupment of that amount in the event of a judgment in this case requiring Corporate Defendants to redress consumers based on enrollments preceding the Consent Order's effective date. Additionally, Corporate Defendants and Danaher each raise twelve affirmative defenses, most of which overlap substantially or entirely. The Bureau now moves to dismiss Corporate Defendants' counterclaim and to strike almost all of the affirmative defenses. For the reasons given below, the Bureau's motion to dismiss the counterclaim is granted and its motion to strike affirmative defenses is granted in part and denied in part.

I.

Under the Redress Provisions of the Consent Order, Corporate Defendants were required to set aside $13,930,000 to be used to redress what the Consent Order defined as "Affected Consumers." Consent Order ¶ 47. The Redress Provisions further obligated Corporate Defendants to submit a "Redress Plan" identifying the

---

[1] After resolving the motions to dismiss, I allowed the Bureau to file an amended complaint that added a substantial assistance claim against Danaher and denied Danaher's request for an interlocutory appeal of my order denying his motion to dismiss. *See* ECF 98.

Affected Consumers. *Id.* ¶¶ 48–49. Any funds left over after payment to the Affected were to be transferred to the Bureau for distribution to the United States Treasury as disgorgement. *Id.* ¶ 50. In the end, $5,002,773.08 remained after Affected Consumers were paid, and that amount went to the Bureau consistent with the Redress Provisions. Counterclaim ¶¶ 29–31.

Corporate Defendants claim that if, as part of this litigation, the Bureau secures relief for consumers harmed by violations prior to the effective date of the Consent Order-- January 3, 2017--then Corporate Defendants should be allowed to recoup the $5,002,773.08 it previously paid to the Bureau and put that money toward the judgment.[2] The counterclaim is premised on Corporate Defendants' understanding that the Bureau seeks relief for pre-January 3, 2017 enrollments. *See* Resp., Mot. to Dismiss Counterclaim, ECF 135 at 2 ("TransUnion brought its Counterclaim alleging that *if* Plaintiff prevails on its claims with respect to accounts enrolled through affiliates prior to 2017, then redress to the affected consumers should come first from the residual portion of the settlement payment TransUnion made under the Consent Order for consumer redress that the [Bureau] ultimately claimed

---

[2] As explained above, the counterclaim also seeks specific relief in the amount of the Residual Redress Payment. Corporate Defendants' briefing on the motion to dismiss the counterclaim clarifies that they only seek this amount in the event the Bureau is successful in this litigation, and not as standalone relief.

for itself." (emphasis in original)). This understanding is reasonable since the amended complaint references Corporate Defendants' activities prior to the effective date. *See* Am. Compl., ECF 99 ¶ 127 (describing Corporate Defendants' conduct "[b]etween February 2014 and March 2020"); *id.* ¶ 139 (describing conduct "[a]s of at least the Effective Date until the present"). Indeed, the Bureau has relied on these allegations to seek discovery predating the Consent Order's effective date. *See* Bureau's Mot. to Compel, ECF 119 at 10–11 (seeking documents from the "relevant time period" of "January 1, 2014 to the present because certain of the Bureau's allegations span that period" (citing Am. Compl. ¶¶ 127, 139, 195)).

To the extent the Bureau sought relief based on enrollments prior to January 3, 2017, however, it now expressly disclaims that it will do so, including in a sworn declaration filed by one of its attorneys. *See* Decl. of Anjali Garg, ECF 142-1 ¶ 3 ("[T]he Bureau is seeking all appropriate monetary relief for Defendants' violations of federal consumer financial laws . . . to the extent that the violations concern consumers who enrolled in or purchased a product or service from Corporate Defendants on or after January 3, 2017."); *id.* (noting that the Bureau seeks relief for "legal violations on or after January 3, 2017"); Bureau's Reply Br., Mot. to Dismiss Counterclaim, ECF 143 at 2 n.1 (clarifying that the Bureau will "no longer seek relief for [the] pre-2017 enrollments"

referenced in the amended complaint and that "[t]his should streamline the litigation"); *id.* at 4 ("[T]he Bureau no longer seeks redress for *any* consumer enrollments prior to 2017." (emphasis in original)). Because there can now be no doubt that the Bureau seeks relief only for enrollments taking place on or after the Consent Order's effective date, Corporate Defendants' counterclaim is dismissed.

## II.

The Bureau moves under Federal Rule of Civil Procedure 12(f) to strike all twelve of Corporate Defendants' affirmative defenses, and eleven of Danaher's--all except for Danaher's Eleventh Affirmative Defense. Rule 12(f) grants district courts "considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter" from a pleading. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(f); additional citation omitted).

### A.

The parties are at odds over whether the plausibility standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies when assessing the sufficiency of affirmative defenses. That issue is unsettled in this district, with some courts applying *Twombly* and *Iqbal*'s plausibility standard and others applying a more lenient fair

notice standard. *Compare Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 937–38 (N.D. Ill. 2019) (characterizing application of the plausibility standard to motions to strike affirmative defenses as the "majority view" and citing cases), *with Aylin & Ramtin, LLC v. Barnhardt*, No. 19-cv-3402, 2022 WL 658786, at *2–3 (N.D. Ill. Mar. 4, 2022) (concluding plausibility standard does not apply).

It is undisputed that affirmative defenses, like any pleading, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Some courts have concluded that Rule 8(c), which addresses affirmative defenses, imposes the same requirements as Rule 8(a)(2), which governs the statement of claims for relief. Increasingly, however, courts are examining the textual differences between Rule 8(c)(1)'s requirement that a party "affirmatively state" affirmative defenses, and Rule 8(a)(2)'s requirement that a party include a statement "showing that the pleader is entitled to relief," and concluding that the plausibility standard applies to the latter but not the former. I agree with the analysis in *Aylin* and other cases that have held the plausibility standard does not apply to pleading affirmative defenses, and adopt that approach here. *See, e.g.*, *Silberman v. Stewart*, No. 20 C 1745, 2021 WL 1057719, at *1 (N.D. Ill. Mar. 18, 2021); *RBG Plastic, LLC v. Webstaurant Store*, No. 1:18-CV-05192,

2020 WL 7027601, at *4 (N.D. Ill. Nov. 30, 2020); *see also* 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1274 (4th ed. 2021) ("[T]he majority of courts have rightly held that Rule 8(c) does not warrant the extension of the Twombly and Iqbal standard to affirmative defenses." (citations omitted)).

B.

In their respective First Affirmative Defenses, Corporate Defendants and Danaher assert that the Bureau's response to Corporate Defendants' proposed Compliance Plan was a condition precedent to enforcement of the Consent Order, and that because the Bureau never responded to the Compliance Plan, the Bureau's claims are barred. I considered and rejected that argument in my order denying defendants' motions to dismiss, *see* ECF 52, and it is inappropriate to raise a rejected argument again as an affirmative defense. *Heller Fin.*, 883 F.2d at 1294–95 (affirming striking affirmative defenses that were simply restatements of rejected motion to dismiss arguments). Allowing this affirmative defense to proceed would only serve to clutter the litigation, for example by permitting defendants to seek discovery on why the Bureau did not respond to the submitted Compliance Plan. And unlike some of the other defenses I discuss below, no amount of discovery will change my holding that the Bureau's response to the Compliance Plan was not required to enforce the Consent Order.

Defendants argue that they intend to show that the terms of the Compliance Plan were necessary to clarify what was required under certain provisions of the Consent Order. But arguing that the Bureau cannot meet its burden to show that certain terms of the Consent Order were violated because those terms are too vague to be enforced is different than saying that the Bureau's non-response to defendants' Compliance Plan renders the Consent Order unenforceable. Defendants remain free to pursue the former line of argument--which can be done without determining why the Bureau failed to respond to the Compliance Plan--but they may not continue to pursue the latter. Corporate Defendants' Fifth, Sixth, and Ninth Affirmative Defenses, and Danaher's Fourth, Fifth, and Eighth Affirmative Defenses, like the First Affirmative Defenses, are "based upon . . . the [Bureau's] failure to respond to TransUnion's Compliance Plan." Defs.' Resp. to Mot. to Strike, ECF 134 at 7. Accordingly, these affirmative defenses are stricken for the same reasons as the First Affirmative Defenses.

Defendants' Second Affirmative Defenses of res judicata or claim preclusion is also stricken because, as discussed above, the Bureau does not seek relief for any violations occurring before the Consent Order's effective date of January 3, 2017. Insofar as defendants assert this defense as barring liability for alleged violations after the effective date, such a defense is legally insufficient. As I previously held, just as "[c]laim preclusion

generally does not bar claims that are predicated on events that postdate the filing of the initial complaint," *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. __, 140 S. Ct. 1589, 1596 (2020) (internal quotation marks and citations omitted), it does not bar the Bureau from pursuing claims predicated on defendants' activity following the Consent Order's effective date.

So, too, for Corporate Defendants' Third Affirmative Defense of accord and satisfaction. As Corporate Defendants explain, this defense is aimed at the Bureau's allegations regarding events prior to January 2017, in view of their interpretation of the waiver contained in the Consent Order. Because the Bureau now maintains that it will not seek remedies for violations prior to January 3, 2017, the defense serves no purpose and is stricken.

Corporate Defendants' Eighth Affirmative Defense and Danaher's Seventh Affirmative Defense assert a constitutional challenge to the Bureau's funding mechanism. I substantively rejected this argument at the motion to dismiss stage and later concluded that the pending Supreme Court case that will presumably resolve the issue, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, No. 22-448 (U.S.), does not warrant a stay of this case. There is no reason to strike this affirmative defense, however, because it could ultimately dispose of this case, and in the meantime will not require any additional discovery. That is because

10

the defense will almost certainly rise or fall with the Supreme Court's decision this term.

Corporate Defendants' Seventh Affirmative Defense and Danaher's Sixth Affirmative Defense assert that the Bureau's claims are barred in whole or in part by the applicable statute of limitations. Though I earlier concluded that it was not clear from the face of the complaint--and now, the amended complaint--that the Bureau's claims are time-barred, statute of limitations defenses are often fact-intensive, and discovery may be needed to determine whether certain aspects of the Bureau's claims are time barred. Accordingly, I will not strike this defense. Nor will I accept the Bureau's invitation to find that defendants misstate the applicable law by averring in the defense that the Bureau's claims are barred "in whole or in part." Thus far, I have only found that, taking the Bureau's allegations as true, at least some violations occurred within the applicable statute of limitations. Fact development is appropriate to flesh out this defense.

Defendants also assert several equitable defenses--estoppel, waiver, and laches. The Bureau urges that defendants are required to plead the specific elements of these defenses, and that they have not done so. The Bureau's position finds some support, even from before *Twombly* and *Iqbal* replaced the prevailing notice pleading standard, *see Bartashnik v. Bridgeview Bancorp, Inc.*, No. 05 C 2731, 2005 WL 3470315, at *4 (N.D. Ill. Dec. 15, 2005)

("Waiver, estoppel and laches 'are equitable defenses that must be pled with the specific elements required to establish the defense.'" (quoting *Yash Raj Films (USA) Inc. v. Atl. Video*, No. 03 C 7069, 2004 WL 1200184, at *3 (N.D. Ill. May 28, 2004))), but because these defenses fail under even a fair notice standard, I need not resolve the issue.

The first of these defenses, estoppel, when asserted "against the government is disfavored and is rarely successful." *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (citation omitted); *see Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." (citations omitted)).[3] In addition to the traditional elements of equitable estoppel--including "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; (3) detriment to the party asserting estoppel"--estoppel against the government

---

[3] Defendants suggest that because a consent order forms the basis of at least some of the Bureau's claims, and a consent order is treated like a contract, this heightened standard does not apply. I disagree. The case defendants cite for this proposition dealt with estoppel raised as a defense *by* the government *against* a private litigant, not the other way around. *See Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999). Even where, as here, violation of a consent order underlies certain of the government's claims, the more demanding standard applies. *See United States v. Krilich*, 126 F.3d 1035, 1037 (7th Cir. 1997) (observing "the difficulty, if not the impossibility, of estopping the government" in suit brought by government to enforce consent decree).

requires a showing of "affirmative misconduct" by the government. *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000) (citations omitted). The Seventh Circuit has explained that affirmative misconduct "is more than mere negligence" and that "[i]t requires an affirmative act to misrepresent or mislead." *Gibson*, 201 F.3d at 994 (citations omitted). And, importantly, "a government's failure to discharge an 'affirmative obligation' is not the same as engaging in 'affirmative misconduct.'" *Id.* (citation omitted).

Corporate Defendants' Fourth Affirmative Defense and Danaher's Third Affirmative Defense allege that the Consent Order "requir[ed] that the Bureau either direct the Corporate Defendants to revise the Compliance Plan or make a determination of non-objection to the Compliance Plan," that the Bureau never did so, and that "[t]he Bureau thus did not comply with the terms of the [Consent] Order and is estopped from bringing this action." Setting aside that I have already rejected that the Bureau was required to respond to the Compliance Plan in order to enforce the Consent Order, the Bureau's non-response amounts at most to a failure to discharge an obligation, and that cannot support an estoppel defense against the government. In their response, defendants suggest a more elaborate scheme in which the Bureau induced Corporate Defendants to sign the Consent Order as part of a plan to keep them waiting on a response to the proposed Compliance Plan

only to spring this suit on them later. That picture is unmoored from any factual content and does not, even under the fair notice standard for affirmative defenses, pass muster. *See FTC v. Day Pacer LLC*, No. 19-cv-01984, 2020 WL 12630538, at *2 (N.D. Ill. Feb. 28, 2020) (striking estoppel affirmative defense where defendant failed to allege affirmative misconduct). And in any event, I have already concluded that the Bureau's failure to respond to the Compliance Plan does not eliminate the Bureau's authority to enforce the Consent Order.

Waiver, like estoppel, is "particularly hard to establish" against the government. *United States v. Navistar Int'l Corp.*, 240 F. Supp. 3d 789, 799 (N.D. Ill. 2017). Such a defense applies only if the Bureau waived its authority with a "clear and distinct manifestation to do so." *Id.* at 800; *see United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) ("[A] waiver of sovereign authority will not be implied, but instead must be surrendered in unmistakable terms." (internal quotation marks and citation omitted)).

Defendants state that by entering into the Consent Order, the Bureau "waived its right to pursue further redress for the conduct that is the subject of the Order." Corp. Defs.' Fourth Affirmative Defense. However, as I previously observed, the Consent Order expressly contemplates possible court action for defendants' noncompliance with the terms of the Consent Order. *See* ECF 52 at

14

8 (citing Consent Order ¶ 82). As for the provision in the Consent Order "releas[ing] and discharg[ing] Respondents from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section IV of this Consent Order, to the extent such practices occurred before the Effective Date and Bureau knows about them as of the Effective Date," Consent Order ¶ 77, the Bureau has now made clear that any pre-January 3, 2017 violations are beyond the scope of this suit. Accordingly, there are no grounds on which defendants can pursue a waiver defense in this case.

Defendants' laches defense is also legally insufficient. The federal government is generally not "subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940) (citations omitted); *see also Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("As a general rule, laches . . . is no defense to a suit by [the government] to enforce a public right or protect a public interest."). The Seventh Circuit, however, has laid down the contours of three exceptions to this rule: "1) the most 'egregious instances' of government delay; 2) suits not governed by a statute of limitations; 3) suits in which the government is seeking to enforce 'private rights' as opposed to those of a sovereign." *United States v. Navistar, Inc.*, 508 F. Supp. 3d 289, 296 (N.D. Ill. 2020) (quoting *United States v. Admin. Enters., Inc.*, 46 F.3d 670, 673 (7th Cir. 1995)).

15

Defendants do not propose that there was an egregious delay. The Bureau brought this suit just over five years after entering into the Consent Order. Even treating that outermost bound as the point from which the Bureau delayed bringing this case, five years is well short even of delays other courts have found not to be egregious. *See id.* (finding delay of eight years unproblematic and noting that "[t]his court has denied laches defense after longer delays than that" (citing cases)). Here, not only was the longest possible delay about five years, but this case was brought while the Consent Order was still in effect. *See* Consent Order ¶ 79 ("This Consent Order will terminate five years from the Effective Date or five years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondents."); Am. Compl. ¶ 23 (alleging the Consent Order was extended on December 22, 2021, and April 1, 2022). As for the second exception, the statute under which the Bureau brings this action--the Consumer Financial Protection Act ("CFPA")--contains a statute of limitations, which defendants have invoked in a separate affirmative defense.[4]

---

[4] Defendants argue that it is not clear whether the statute of limitations or laches applies in the context of a consent order, citing *Cook*, 192 F.3d at 695. But as explained above, laches was held to apply in that *Cook* against the private litigant, not the government, so that case offers no support for defendants' view.

That leaves the third exception, which concerns the nature of the Bureau's suit. Courts have sometimes concluded that the government is subject to the defense of laches when it seeks to vindicate individual rights. For example, in suits by the National Labor Relations Board (NLRB) to enforce a remedial order, the Seventh Circuit found laches might apply. *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 893–94 (7th Cir. 1990). In doing so, it relied on dictum from *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355, 373 (1977), where the Supreme Court observed that the Equal Employment Opportunity Commission (EEOC) might be subject to the defense of laches when bringing a suit on behalf of an employee for violation of Title VII of the Civil Rights Act of 1964. Additionally, where the government acts in its capacity as a holder of commercial paper--like when the government has issued a check to one party and then is asked by another party to pay out on that check--it "stands in no different light than any other drawee." *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 369 (1943). In other words, when the government seeks to enforce private rights on its own behalf, laches may apply.

Similar circumstances are absent here. In *P*I*E Nationwide* and *Occidental Life Insurance*, the government's suits concerned the rights of a single claimant against their employer. Indeed, the individuals in each action themselves had complained to the respective agencies of the alleged statutory violations. Here, by

17

contrast, the Bureau seeks relief on behalf of a broad swath of consumers--some of whom have contacted the Bureau with complaints and some not. That suggests the Bureau's suit is for the purpose of vindicating a broader public interest, rather than a discrete private one. *See Utah Power & Light Co.*, 243 U.S. at 409 (holding laches inapplicable to government suit "enforc[ing] a public right or protect[ing] a public interest" (citations omitted)).

The Bureau's suit is more in line with those where courts have found laches unavailable. That includes cases like *CFTC v. Kraft Foods Group, Inc.*, 195 F. Supp. 3d 996 (N.D. Ill. 2016), a government action premised on alleged misconduct in purchasing and selling wheat and wheat futures. There, the court considered cases like *P\*I\*E Nationwide*, but found that the general rule that the government is not subject to laches applied. *Id.* at 1010. Similarly, in an enforcement action by the Securities and Exchange Commission (SEC), laches was inapplicable because the government exercised its own rights in bringing the action. *SEC v. Fisher*, No. 07 C 4483, 2009 WL 780215, at *2-3 (N.D. Ill. Mar. 20, 2009).

Next, I strike Corporate Defendants' affirmative defense for setoff or recoupment. Corporate Defendants offer no response to the Bureau's arguments in support of striking the defense, and it may be stricken for the same reasons that I dismissed Corporate Defendants' counterclaim, which also sought setoff or recoupment.

18

The Bureau argues that Corporate Defendants' Eleventh Affirmative Defense, which states that the Bureau's claims "are barred to the extent that the common enterprise theory does not apply to claims under the CFPA," should be stricken both because it is a mere denial of liability and because it misstates the law. Whereas a denial of liability attacks a plaintiff's prima facie case, affirmative defenses "generally admit the matters in a complaint but nevertheless assert facts that would defeat recovery." *Yash Raj Films*, 2004 WL 1200184, at *3 (citing *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734 (N.D. Ill. 1982)). I agree with the Bureau that this defense simply denies that common enterprise liability is available under the CFPA--an argument the Corporate Defendants may continue to pursue--and therefore that it is not properly pled as an affirmative defense. Corporate Defendants do not respond to the Bureau's argument on this front, instead focusing on whether common enterprise liability is, in fact, available here. Accordingly, this defense is stricken.

Corporate Defendants' and Danaher's Twelfth Affirmative Defenses purport to reserve the right to assert additional affirmative defenses as this case proceeds. Those defenses are stricken as improper. *See FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1141 (N.D. Ill. 2013) (striking similar reservation of rights affirmative defense). Should defendants wish to add affirmative defenses in the future, they may do so by filing a motion to amend.

19

Danaher's Ninth and Tenth Affirmative Defenses are unique to him. His Ninth Affirmative Defense asserts that, pursuant to 12 U.S.C. § 5563, I lack jurisdiction to impose any penalty--including monetary damages--beyond requiring compliance with the Consent Order. Danaher raised this argument in his motion to dismiss. I did not squarely address it, concluding instead that other statutory provisions--§§ 5564 and 5565--undergird pursuit of monetary relief in this action. *See* ECF 52 at 18. It is not immediately clear to me that a full factual record could inform Danaher's § 5563 argument--or that any discovery is required to develop this defense--but neither is it clear that allowing the defense to proceed would add clutter, rather than substance, to the case. Additionally, because I have not yet expressly addressed the argument and it is disputed by the parties, the defense should remain.

Danaher's Tenth Affirmative Defense is stricken, however. That defense is that, to the extent 12 C.F.R. § 1081 is the basis for the Bureau's enforcement of the Consent Order against Danaher, it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and should be set aside under 5 U.S.C. § 706. Danaher did not raise this argument in any of his prior motions. In his motion for interlocutory appeal, Danaher argued that he could not be held liable for Consent Order violations because the procedures set forth in § 1081 had not been

followed. I did not expressly address that argument, instead resolving his motion on the grounds that an interlocutory appeal would not speed up this litigation. ECF 98.

The regulations at 12 C.F.R. § 1081 are promulgated under 12 U.S.C. § 5563. Since I have already held that the Bureau may pursue its claims against Danaher consistent with its statutory authority, *see* ECF 52, then a regulation promulgated pursuant to that statutory authority cannot be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because it purports to give the Bureau that very authority. In other words, the aspect of the regulation Danaher seeks to challenge does not go beyond the statutory authority I have already found the Bureau to possess. Accordingly, there is no reason to embroil this case in extensive discovery over the rulemaking process as to that regulation. Danaher's Tenth Affirmative Defense is legally insufficient and is stricken.

### III.

For the foregoing reasons, the Bureau's motion to dismiss Corporate Defendants' counterclaim is granted. The Bureau's motion to strike is granted as to Corporate Defendants' First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and Twelfth Affirmative Defenses, and as to Danaher's First, Second, Third, Fourth, Fifth, Eighth, Tenth, and Twelfth Affirmative Defenses. I strike these defenses with prejudice, since they are legally

insufficient or improper as affirmative defenses and pleading additional facts would not save them. The motion is denied as to Corporate Defendants' Seventh and Eighth Affirmative Defenses, and as to Danaher's Sixth, Seventh, and Ninth Affirmative Defenses.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: November 9, 2023