UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | No. 22 CV 1880 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| TRANSUNION, TRANSUNION, LLC, TRANSUNION INTERACTIVE, INC., and JOHN T. DANAHER, | ) ) ) ) ) | |
| Defendants. | ) ) | August 19, 2024 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Consumer Financial Protection Bureau (the "government") sues Defendants for violating the terms of the January 3, 2017 consent order ("Consent Order") it issued against them in *In re TransUnion Interactive, Inc., et al.*, No. 2017-CFPB-0002, brought under the Consumer Financial Protection Act, the Electronic Fund Transfer Act, and the Fair Credit Reporting Act. The complaint includes nine separate counts of wrongdoing, but the government's theory of liability is that Defendants misled millions of consumers into unknowingly signing up for credit monitoring subscription services, charged them a monthly fee on an automatic payment basis, and made it difficult for them to cancel the service once realizing what they had purchased.

Before the court is Defendants' motion to compel the government to produce documents withheld based on the deliberative process privilege and its extension, the

bank examination privilege (together, the "Privilege"). For the following reasons, the motion is denied:

## Background

On December 22, 2023, Corporate Defendants[1] moved to compel the government to produce internal documents relating to compliance with the Consent Order, which the government had withheld on relevance and privilege grounds, among other objections. (R. 173, Corp. Defs.' Mot. to Compel; R. 174, Corp. Defs.' Mem.) In the alternative, they sought a court order requiring the government to provide greater detail as to its privilege claims. (Id.) The court granted in part and denied in part the motion to compel on February 16, 2024. (R. 219.) In its order, the court overruled certain non-privilege objections but declined to rule on any privilege issue because it was not clear which documents the government was withholding based on privilege. (Id. at 2.)

As to non-privilege objections, the court noted that because of "the nature of the parties and the allegations against TU, most of the relevant discovery in this case will come from TU because this case focuses on what TU did or failed to do since January 3, 2017," the date the Consent Order was entered. (Id. at 3.) As to the relevance of documents related to "TU's compliance or non-compliance with the Consent Order," the court commented that this issue is "at the heart of the case" but

---

[1] "Corporate Defendants" refers to Defendants TransUnion, TransUnion, LLC, and TransUnion Interactive, Inc. (collectively, "TU"). Defendant John T. Danaher did not join in Corporate Defendants' December 22, 2023 motion to compel but joins in the current motion.

2

ordered the government to produce only "those documents collected and generated by non-attorneys not performing their duties under specific directions from government prosecutors." (Id. at 5 (requiring the government to "use reasonable efforts to search and locate documents non-lawyers collected and generated on their own regarding TU's compliance or non-compliance with the Consent Order").) For any remaining documents withheld "in this narrower universe of documents" ("Consent Order Documents"), the court ordered the government to "identify each document and its specifics and explain why the document is protected from disclosure in a privilege log." (Id.)

In response to the court's order the government produced 20 documents and a privilege log listing more than 250 Consent Order Documents on March 18, 2024. (R. 314, Defs.' Mem. at 3.) Defendants represent that 171 of those documents are being withheld based on the Privilege alone, and that these are the subject documents of the current motion (the "Withheld Documents"). (Id.) The government submitted a sworn declaration from its supervision director, Lorelei Salas, who declared that based on a review of "a representative sample" of 53 of the 256 Consent Order Documents, the Withheld Documents fall "within the realm of" the Privilege because they address: (1) the government's assessment of the Compliance Plan; (2) the government's 2018 examination; and (3) periodic updated activity regarding Defendants' consumer businesses. (Id. at 3-4, Ex. 1 ¶¶ 3, 18, 50, 68, 75.)

3

## Analysis

Defendants argue that the government must produce the Withheld Documents because the Privilege does not apply here, and even if it could be asserted, the government fails to meet its threshold burden to shield them from disclosure. (R. 314, Defs.' Mem. at 4-16.) The government responds that Defendants seek to divest the Privilege protecting "the preliminary analyses and opinions" of the agency staff, even though the information is wholly irrelevant in a case "about *Defendants'* conduct and the facts they provided" to the government, not the government's "deliberations regarding those facts." (R. 325, Govt.'s Opp. at 2 (emphasis in original).) Regardless, the government asserts that Defendants have not shown "a particularized need" for each of the Withheld Documents. (Id.) Having considered the competing arguments, the court agrees with the government that Defendants have failed to show that the Withheld Documents are relevant to the parties' claims or defenses. Because the court reaches its decision based on relevance, it declines to decide whether the Privilege protects the Withheld Documents from production.

"The purpose of discovery is to refine the case and to prepare it for trial based on a full understanding of the relevant facts." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015). Federal Rule of Civil Procedure 26(b) governs the scope of discovery and provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Discovery is designed to help "define and clarify the issues," and as such, "relevance is to be construed broadly." *Doe v. Loyola*

4

*Univ. Chi.,* No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (internal quotations omitted). A court has the "inherent authority" with respect to discovery and otherwise "to manage judicial proceedings and to regulate the conduct of those appearing before it." *Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 776 (7th Cir. 2016).

During fact discovery, Corporate Defendants issued Request for Production of Documents ("RPD") No. 12, seeking "[a]ll documents and communications, including internal communications, and any facts collected by the [the government] relating to the Corporate Defendants' compliance (or noncompliance) with the 2017 Consent Order, including all exculpatory facts."[2] (R. 314, Defs.' Mem. at 1 (citing R. 173, Ex.7 at 19 (attaching RPD No. 12 and the government's response thereto)).) The government responded by producing "nearly 800 documents from its files responsive to [] RPD No. 12" but refused to produce the Withheld Documents on grounds that such documents are not relevant to any party's claims or defenses and are protected from disclosure by the Privilege and other privileges and immunities. (R. 325, Govt.'s Opp. at 6, 9-12.) Defendants then brought this motion arguing that the Withheld Documents are "[c]ritically [r]elevant" to the question of "what TU was required to do under the terms of the Consent Order." (R. 314, Defs.' Mem. at 5.)

Specifically, Defendants contend that the Withheld Documents are "central" to their defenses. (Id.) Defendants acknowledge, however, that the court has already ruled in this case that they cannot pursue the issue of whether the government's

---

[2] Defendant Danaher served an identical request on the government. (R. 325, Govt.'s Opp. at 6.) For the sake of efficiency, the court refers only to Corporate Defendants' RPD No. 12 in this ruling.

5

"nonresponse to [D]efendants' Compliance Plan renders the Consent Order unenforceable." (Id. at 6 n.2 (citing R. 153 at 9 (noting that Defendants "remain free to pursue" argument that terms of the Consent Order "are too vague to be enforced")).) And the court struck Defendants' affirmative defenses "based upon . . . [the government's] failure to respond to [TU's] Compliance Plan." (R. 153 at 9.) Given these rulings, Defendants are barred from seeking discovery regarding the government's failure to respond to the Compliance Plan they submitted on June 30, 2017. (See id.) Yet that is exactly what Defendants seek to do through their motion—to discover pre-decisional and deliberative communications to determine why the government did not issue a non-objection or feedback based on the Compliance Plan submitted.

To be sure, Defendants try to argue the relevance of the Withheld Documents by guessing the substance of communications—or a lack thereof—held between and among the government employees regarding conduct provisions in the Compliance Plan. (R. 314, Defs.' Mem. at 6-7.) For example, based on the government's privilege log, Defendants surmise that the government engaged in "extensive dialogue and evaluation" internally regarding the Compliance Plan and that government examiners held "monitoring meetings" discussing the Plan without "suggest[ing] that TU's Plan fell short of expectations." (Id. at 6-7.) Even if that were the case, however, this court previously indicated in a discovery order that "TU grossly exaggerates the significance of the government not responding to the compliance plan because its failure to do so is neither here nor there in terms of the 'specific steps that TU was

6

required to take' under the Consent Order." (R. 219 at 5.) Likewise, the court noted that "[g]iven the nature of the parties and allegations against TU, most of the relevant discovery in this case will come from TU because this case focuses on what TU did or failed to do since January 3, 2017." (Id. at 3.) And while the court ultimately overruled the government's relevance objection to Defendants' RPD No. 12, it made clear that "TU's compliance or non-compliance with the Consent Order," not the government's response, was "at the heart of this case." (Id. at 5.)

Given this backdrop, to prevail on their motion, Defendants must show why the documents they seek here—namely, "internal documents" from the government shedding light on its views of whether Defendants were in compliance with the Consent Order, (R. 314, Defs.' Mem. at 2)—are relevant to the parties' claims or defenses and proportional to the needs of the case, Fed. R. Civ. P. 26(b). Defendants fail to make such a showing. Although Defendants claim they need the Withheld Documents to prove "a central issue" identified by the court—"what TU was required to do under the terms of the Consent Order," (R. 314, Defs.' Mem. at 5), Defendants do not establish a sufficient nexus between the discovery they seek and that key issue. Put differently, while Defendants refer to the "pre-decisional" and "deliberative" documents requested in RPD No. 12 as "critical[]" and "pivotal" to the merits of the government's claims and their statute of limitations affirmative defenses, they do not explain why they need the government's preliminary analyses as opposed to the final determinations to argue that certain terms of the Consent Order are "ambiguous," "disputed," and "vague." (Id. at 4-5, 7-9.)

7

Such a nexus is particularly important here because, as noted, the court barred discovery into whether the government's "non-response to [D]efendants' Compliance Plan renders the Consent Order unenforceable" and struck affirmative defenses based on the government's failure to respond to the Compliance Plan. (R. 153 at 9.) While Defendants may still argue that the Consent Order is unenforceable because its terms are vague, (id.), the Seventh Circuit has rejected the need for discovery into a federal agency's internal deliberations where a defendant asserts defenses related to statutory interpretation and an "impermissibly vague" regulation. *U.S. v. Farley*, 11 F.3d 1385, 1391 (7th Cir. 1993) ("Comments made in internal [agency] documents are not official agency actions and therefore not legally relevant to a court's review."). Instead, to determine whether terms are vague, "the court need look only to the language of the regulation and any official, public interpretations of it." *Farley*, 11 F.3d at 1391. This precedential decision appears to conflict with Defendants' argument that the Withheld Documents "could be relevant to demonstrating . . . what disputed terms meant, as well as the customary usage of the terms." (R. 314, Defs.' Mem. at 8.) Regardless, Defendants' reasoning is too tenuous to justify a fishing expedition into government agents' preliminary views on the matter.

As to the statute of limitations affirmative defense, Defendants assert that the documents requested in RPD No. 12 are "highly relevant" to the issue of when the statute of limitations began to run.[3] (Id. at 9.) Defendants represent that the

---

[3] Corporate Defendants' seventh affirmative defense and Danaher's sixth affirmative defense rest on the statute of limitations. (R. 109, Corp. Defs.' Answer at 73-74; R. 110, Danaher's Answer at 99.)

8

government concedes "the statute begins to run when the agency 'discovers *facts* suggesting all necessary elements of a violation'—not when a *decision is made* that a violation has occurred." (Id. (emphasis in original).) Given this standard, Defendants argue they must have access to the Withheld Documents to determine what the government "knew about the practices and when." (Id.) But as the government points out, Defendants' statute of limitations defense "rest[s] on the timing of the [government's] receipt of the Compliance Plan and Redress Plan and what those documents said"—not on "[e]xaminers' views on the documents after the [government] received them." (R. 325, Govt.'s Opp. Br. at 12.) In other words, based on the factual allegations Defendants pleaded in their statute of limitations defense, what matters here is "when relevant facts were provided to [the government]," not the government's "subsequent deliberations about those facts." (Id. at 13.)

Insofar as Defendants point to a prior discovery order to make a relevance argument, (R. 314, Defs.' Mem. at 2 (citing R. 219 at 5)), that is not enough to satisfy the standard set forth in Rule 26(b). This court previously ordered the government to produce certain documents responsive to RPD No. 12 to the extent they were relevant to "TU's compliance or non-compliance with the Consent Order." (R. 219 at 5.) In so ruling, the court made clear that the government was "only ordered to produce those documents collected and generated by non-attorneys not performing their duties under specific directions from government prosecutors." (Id.) The court did not intend to obligate the government to search for and produce all documents related to the government's preliminary views regarding TU's compliance or non-

9

compliance with the Consent Order.[4] (See id. at 3 (noting earlier in that order that given "the nature of the parties and the allegations against TU, most of the relevant discovery in this case will come from TU because this case focuses on what TU did or failed to do since January 3, 2017").)

## Conclusion

For the foregoing reasons, Defendants' motion to compel is denied.

          **ENTER:**

          */s/ Young B. Kim*
          **Young B. Kim**
          **United States Magistrate Judge**

---

[4] In the same vein, the court recently clarified for the parties that while it previously ordered the production of documents reflecting the government's "policies and practices" relating to compliance plans, the court did not intend "to obligate the government to then search for and produce all documents and communications related to such policies and practices." (R. 336.)